EDSON LEROY DAVIS *vs.* LUTHER B. HUDSON and Wife.

December 31, 1881.

**Probate Court—Guardian of Non-Resident Minor.**—A probate court of this state may properly appoint a guardian for a non-resident minor, as respects any estate which the minor may have in the county where such probate court is established. If a general guardian be appointed in such circumstances, the appointment is good to the extent of the minor's estate within the jurisdiction in which it is made.

**Same—Procedure—Notice required.**—Under Gen. St. (1866) c. 59, § 13, (Gen. St. 1878, c. 59, § 21,) authorizing the appointment of a guardian for a non-resident minor, "after such notice to all persons interested as the judge shall order, and a full hearing and examination," the notice is jurisdictional; and it is only upon notice that the judge of probate is authorized to appoint.

**Sale by Guardian—Action by Ward—License to Sell.**—Gen. St. (1866) c. 57, § 47, (Gen. St. 1878, c. 57, § 51,) enacts that "in case of an action relating to any real estate sold by a * * * guardian, * * * in which the ward * * * shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it appears * * * that the guardian was licensed to make the sale by the probate court having jurisdiction," etc. *Held*, following *Montour* v. *Purdy*, 11 Minn. 278, (384,) that, under this section, the proceedings of a probate court, in reference to a guardian's sale, may be drawn in question by a ward in an action collateral to such proceedings, and upon the grounds in section 47 specified.

**Same—Same—Appointment of Guardian.**—*Held,* *also,* that the appointment of a guardian not being a proceeding in reference to a guardian's sale, its validity is not collaterally assailable under section 47, but that its proof is governed by the rules of evidence applicable in other analogous cases.

**Probate Courts—Records as Evidence—Jurisdiction presumed.**—The probate courts of this state are courts of record and courts of superior jurisdiction. Their records import absolute verity, and their proceedings possess, as a general rule, the same presumptions of jurisdiction possessed by courts of superior common-law jurisdiction. Where a probate court possesses general jurisdiction of a given class of subject-matters, the possession of jurisdiction assumed to be exercised in a particular case falling within that class is, in collateral proceedings, presumed; or, as the rule may be otherwise stated, the particular case is not intended to be out of its jurisdiction unless it affirmatively appears to be so, and the affirmative appearance must be an affirmative appearance upon the face of the record itself. This general rule of presumption appears to be somewhat modified by Gen. St. (1866) *c.* 57, § 47, (Gen. St. 1878, *c.* 57, § 51.)

**Same—Application to Guardianships.**—The rule of presumption applied to the case of the appointment of a guardian for a non-resident minor having estate in this state. The record being silent upon the matter of notice of the application for such appointment, such notice is presumed in a collateral proceeding.

**Record of Letters of Guardianship—Record as Evidence.**—Letters of guardianship are proper to be recorded upon the record-books of the probate court, both under Gen. St. (1866) *c.* 49, § 8, subd. 3, and under Gen. St. 1878, *c.* 49, § 8, subd. 3. When recorded the records are, as records, competent evidence without the production of the original letters, and without accounting for their absence.

**Same—Manner and Time of Record.**—The transcribing of such letters, as well as of an order appointing a guardian, may properly be made by a clerk of the probate judge under the judge's direction. The fact that they are transcribed some years after they were originally made out does not deprive the records of their evidentiary value.

**Guardian's Sale—Validity.**—*Montour* v. *Purdy,* 11 Minn. 278, (384,) and *Rumrill* v. *First Nat. Bank,* 28 Minn. 202, followed and applied.

Ejectment for an undivided one-ninth of a quarter-section of land in Goodhue county, claimed by plaintiff as one of the heirs-at-law of Benjamin Hodgman, who died seized of the entire quarter-section, in

1863. The defendant in his answer alleged title under a sale made in 1867 by the guardian of plaintiff, (who was then a non-resident minor, and who became of age in 1878,) and asked that his title be quieted, and plaintiff be adjudged to have no interest in the land.

At the trial in the district court for Goodhue county, before *Crosby*, J., (a jury being waived,) the defendant (under objection and exception) introduced in evidence the records of the probate court of that county, to show the appointment of the guardian, and the authority for and validity of the guardian's sale. The only evidence produced to show the appointment of the guardian was:

1. A record of the following order:

[Caption] "In the matter of the estate of Edson Davis, of St. Lawrence county, New York:

"On reading and filing the petition of James H. Hodgman, praying that the said James H. Hodgman, of the city of Red Wing, in said county of Goodhue, may be appointed guardian of Edson Leroy Davis, of St. Lawrence county, New York, a minor, and the bond of said James Hodgman having been duly filed and approved by said court: It is hereby ordered that the said James H. Hodgman be, and he hereby is, appointed the general guardian of said Edson Leroy Davis, and that letters of guardianship be duly issued unto him in pursuance of this order.

"Dated and signed this ninth day of November, A. D. 1866.

"ROBERT DEAKIN,

"Judge of Probate."

2. A record of letters of guardianship, in the ordinary form, of the same date with the order, and addressed James H. Hodgman. The plaintiff, in rebuttal, offered evidence to show the non-receipt of any notice by him, and his entire ignorance of any application for the appointment of a guardian, or of the appointment made. This evidence was excluded. He also called a witness who testified that he was employed in the office of the probate court while Deakin was still judge of probate, and that, in 1874, while so employed by Deakin, he found the above order and letters of guardianship in an envelope in the office of the court, being the only papers which he

found relating to the appointment of a guardian of plaintiff, and that he then made the record of them now in evidence.

Upon the findings of the court, judgment was entered for the defendant, and the plaintiff appealed.

*Gould & Snow,* for appellant.

The courts of this state have no power to appoint general guardians for persons residing in other states. *Galpin* v. *Page,* 18 Wall. 350. While probate courts are held to be courts of general jurisdiction over the subject of guardianship (*State* v. *Wilcox,* 24 Minn. 143; *Dayton* v. *Mintzer,* 22 Minn. 393,) it is nowhere held that they are superior courts, or courts of general jurisdiction, except in this limited sense. The fact that they are courts of record does not make them courts of general jurisdiction. Their records may therefore import absolute verity so far as they go, but no jurisdictional fact can be presumed in behalf of the proceedings unless there be a finding or recital of such fact. And where courts, even of general jurisdiction, are directed by statute to proceed in a special manner, their records must disclose that they have complied with the statute. *Ullman* v. *Lion,* 8 Minn. 338, (381;) *Galpin* v. *Page,* 18 Wall. 350.

. The statute required notice of the application for appointment of the guardian to be given to all parties interested. This notice is jurisdictional. The record shows that the order appointing the guardian was made upon the reading and filing of the petition only. If the order did not recite on what it was based, it might be urged (*Turrell* v. *Warren,* 25 Minn. 9,) that it was founded on such proceedings as authorized the action of the court. But as the record sets forth that the order was made on the petition alone, it cannot be contradicted by presuming that the order was made upon notice as well as on the petition. "When the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point; and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred." *Galpin* v. *Page,* 18 Wall. 350, 366; *Gillett* v. *Needham,* 37 Mich. 143.

The appointment of the guardian being void, of course the subsequent action for sale was void. There being no guardian, there was

no one to petition, and no one to whom license could be granted. *Chase* v. *Ross*, 36 Wis. 267; *McCubb* v. *Bray*, Id. 333; *Sigourney* v. *Sibley*, 21 Pick. 101; *Sitzman* v. *Pacquette*, 13 Wis. 291; *Frederick* v. *Pacquette*, 19 Wis. 541; Freeman on Void Judicial Sales, § 10.

BERRY, J. 1. "The judge of probate in each county, when it appears to him necessary or convenient, may appoint guardians to minors and others, being inhabitants or residents in the same county, and also to such as reside out of the state and have any estate within the same." Gen St. (1866) c. 59, § 1. (Gen. St. 1878, c. 59, § 1.) "When a person liable to be put under guardianship, according to the provisions of this chapter, resides without this state and has any estate therein, any friend of such person, or any one interested in his estate in expectancy or otherwise, may apply to the judge of probate of any county in which there is any estate of such absent person, and, after such notice to all persons interested as the judge shall order, and a full hearing and examination, a guardian may be appointed for such absent person." Id. §. 13. (Gen. St. 1878, c. 59, § 21.) "Such guardian shall have the same powers and duties with respect to any estate of the ward found within this state, and also with respect to the person of the ward if he comes to reside therein, as are prescribed with respect to other guardians appointed under this chapter." Id. § 14. (Gen. St. 1878, c. 59, § 22.)

Beyond question these provisions of statute assume to authorize a probate court of this state to appoint a guardian for a non-resident minor, as respects any estate which the minor may have in the county where such probate court is established. With a valid authority to this extent our probate courts may properly be invested. Statutes conferring like authority have been in force here ever since the organization of the territory of Minnesota, and similar laws are found in Massachusetts, Ohio, Vermont, Michigan, Wisconsin, and other states. Jurisdiction to appoint a guardian exists as well when the infant has property in the state where the jurisdiction is sought to be exercised, as when he is domiciled therein. It rests upon a like basis in both cases, viz., the right and duty of a government to take care of those who are unable to take care of themselves, as respects either person or property. *McLosky* v. *Reid*, 4 Bradf. (N. Y.) 334; Wharton on

Conflict of Laws, §§ 259, 261, 265, 266, 268; and see *Clarke* v. *Cordis*, 4 Allen, 466. With respect to real estate, it is to be added that the control and disposition of it must necessarily be subject to the *lex rei sitæ*.

2. If a general guardian be appointed for a non-resident minor, and it be admitted that the appointment is, on account of its generality, too broad, there is no reason why it should not be held good to the extent to which it would have been lawful and competent to make it, to wit, to the extent of the minor's estate within the jurisdiction in which the appointment is made. In the case at bar the minor was a resident of the state of New York, and owner of land in our county of Goodhue. It was therefore competent for the probate court of Goodhue county, and within its general jurisdiction, to appoint a guardian for him as respected such land, (being the same which is in controversy in this action,) and the appointment of a general guardian would be good to that extent.

3. This is an action in which the defendant, to maintain his title to certain real estate and his right to its possession, relies upon a sale claimed to have been made by a guardian appointed for a non-resident minor, under the statutory provisions before quoted. The validity of the sale is contested by the minor—the plaintiff—now of age.

One objection taken to the sale is that it does not appear that notice of the hearing of the application for the appointment of a guardian was given, as by law required. Though the probate courts of this state are invested with a general authority in matters of guardianship, the manner and conditions of its exercise in a particular case are regulated and controlled by statute. Jurisdiction in a particular case, as, for instance, to appoint a guardian for a particular minor, must therefore regularly be acquired in the manner which the statute points out. As respects the appointment of a guardian for a non-resident minor, section 13, before cited, provides that "after such notice to all persons interested as the judge shall order, and a full hearing and examination, a guardian may be appointed for such absent" (*i. e.*, non-resident) minor. The notice is jurisdictional, for it is only *after notice* that the judge is authorized to make the appointment. The manner of notice is committed to the discretion of the

judge, but some notice is indispensable. The fact that a hearing is provided for is of weight, if not decisive, in support of this conclusion. *Gillett* v. *Needham*, 37 Mich. 143; *Mohr* v. *Porter*, 8 N. W. Rep. 364.

4. By Gen. St. (1866) *c.* 57, § 47, (being the same as Gen. St. 1878, *c.* 57, § 51,) it is enacted that "in case of an action relating to any real estate sold by a  *  *  * guardian,  *  *  * in which the ward · *  *  * shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it appears *  *  * that the  *  *  * guardian was licensed to make the sale by the probate court having jurisdiction," etc. As held in *Montour* v. *Purdy*, 11 Minn. 278, (384,) and *Babcock* v. *Cobb*, Id. 247, (347,) the effect of this section is to authorize the proceedings of a probate court in reference to a guardian's sale to be drawn in question by a ward (including, of course, an ex-ward) in an action collateral to such proceedings and upon the grounds which the section specifies. One of the requisites of a valid guardian's sale, for want of which the ward may avoid it, is that the guardian was licensed to make the sale by the probate court having jurisdiction. It is, however, only irregularities in the proceedings in reference to the sale which can be attacked under section 47. The right to attack collaterally anything which may have occurred before the institution of these proceedings is not given by that section. The appointment of the guardian is not one of the proceedings in reference to a sale, but something occurring before they are started; and it follows that the validity of the appointment of the guardian by whom a given sale is made, is not collaterally assailable under section 47. It is not one of the facts which that section requires to appear in order to a valid sale. Where a ward attacks a sale collaterally, as in this case, by bringing an action in the nature of ejectment, it is for the defendant to maintain his title by such proof of a valid guardian's sale as the law requires. So far as the proceedings proper in reference to the sale are concerned, a rule of proof is prescribed by section 47. As to other matters upon which the validity of the sale depends, the rules of evidence applicable to other analogous cases control. This is the case with respect to proof of guardianship.

5. The question how is this proof to be made, brings us to a fundamental inquiry into the *status* of our probate courts. Section 7, article 6, of our constitution declares that the probate court shall be a court of record. One effect of this, as held in *Dayton v. Mintzer*, 22 Minn. 393, is to confer upon its records the same characteristic of absolute and uncontrollable verity imported by the records of courts of record in general. The constitutional provision was doubtless enacted in view of the vast importance of the business transacted in probate courts, and the consequent necessity that their proceedings should not only be recorded as a perpetual memorial, but that the records should possess a verity corresponding to the importance of the interests involved. This could be nothing less than a conclusive and indisputable verity — a verity which should make the records unassailable by any collateral attack. This proposition rests upon the same considerations and necessities as the doctrine of the impregnability of the records of what are ordinarily spoken of as courts of superior common-law jurisdiction.

We think it was the design and effect of the constitution to go still further, and, as a general rule, to place the probate courts of this state upon the same footing, as respects the presumption of jurisdiction in a particular case, as the courts last mentioned. With regard to them the settled doctrine is that where they possess general jurisdiction of a given class of subject-matters, the possession of jurisdiction assumed to be exercised in a particular case falling within such class is, in collateral proceedings, presumed; or, as the rule is sometimes expressed, the particular case is not intended to be out of the jurisdiction of such court, unless it affirmatively appears to be so. *Holmes* v. *Campbell*, 12 Minn. 221; *Turrell* v. *Warren*, 25 Minn. 9. For several reasons we think this rule applicable to our probate courts.

In the first place, they are, in fact, courts of superior jurisdiction. The constitution and the laws commit to them general, original, and probably exclusive original, jurisdiction over "the estates of deceased persons and persons under guardianship"—(article 6, § 7)—a jurisdiction second to none in practical importance. *Jacobs* v. *Fouse*, 23

Minn. 51. Though limited to certain specified subjects, (and this is the case with all courts,) their jurisdiction in respect to the same is general and not inferior. To be sure, they are to some extent under the control of the district and supreme courts, but only in the exercise of an appellate and remedial jurisdiction. As respects the subjects committed to them in the exercise of an original jurisdiction, they have all the power which any court has; consequently they are not inferior to any other court in the exercise of that jurisdiction, and, as they are not inferior courts, they are superior courts.

In the second place, the probate courts of this state are made courts of record, and, their records importing absolute verity, they are in this respect placed upon a level with the district and supreme courts. They are thus made to take rank with our superior courts of common-law jurisdiction, in the respect which, if not the most, is certainly one of the most, striking and prominent characteristics of the latter,—a characteristic so important that there is high authority for making the fact that a court is a court of record the test which confers upon its proceedings in a particular case (falling within the general scope of its jurisdiction) the presumption of jurisdiction, rather than the fact that it is a superior court of general common-law powers. Freeman on Judgments, § 122, and cases cited.

In the third place, the view suggested receives no inconsiderable support from a reference to the judicial decisions of other states in regard to the effect of analogous constitutional or statutory provisions.

The constitution of the state of Ohio, adopted in 1851, declares, in article 4, § 7, that "there shall be established in each county a probate court, which shall be a court of record." The case of *Sheldon's Lessees* v. *Newton*, 3 Ohio St. 494, decided in 1854, and citing cases determined in that state before 1851, shows in what sense the term "courts of record" was then understood, what effect was given to the proceedings of courts of probate as such courts of record, and that the same presumptions of jurisdiction in a particular case falling, as respected its subject-matter, within the general scope of their jurisdiction, are allowed to the probate courts as to superior courts exercising common-law powers. See, also, *Shroyer* v. *Richmond*, 16 Ohio

St. 455. Were it not for the fact that courts of probate were, under our territorial government, made courts of record, first by a statute enacted in 1849, at our first legislative session,—see Laws 1849, *c.* 20, subc. 3, §§ 1, 2, 8; *Lee's Case*, 1 Minn. 44, (60;) and *Baze* v. *Arper*, 6 Minn. 142, (220;)—and, secondly, by a statute enacted in March, 1852, (see Pub. St. *c.* 58, § 53,) there would be but little room for doubt that our constitutional provision was borrowed from the constitution of Ohio, and that its borrowers had in mind the identical construction which had been given to it by the courts of that state.

A like construction and effect are given in Illinois to the fact that the probate courts of that state are courts of record. *Propst* v. *Meadows*, 13 Ill. 157, (1851;) *People* v. *Gray*, 72 Ill. 343; *Bostwick* v. *Skinner*, 80 Ill. 147. Also in Virginia. *Andrews* v. *Avory*, 14 Gratt. 229. Also in Missouri. *Johnson* v. *Beazley*, 65 Mo. 250.

In the fourth place, we think, in the absence of inhibition to the contrary, either by the constitution or by law, considerations of sound public policy and general utility require that the proceedings of our probate courts should, as far as just and fair construction will permit, be sustained by the presumption suggested. The business of these courts is in the aggregate very large, constantly increasing in a young state, and touching, in the course of a few years, almost every person in the community. The title to a very considerable portion of the private real property in the state passes through these courts every year, and in a period of 20 or 30 years nearly all of it. The probate judges are not required to be, and as a general rule they are not, men learned in law. Though the business of these courts is commonly administered with integrity and good sense, and with due regard for the interest of those concerned, it is not and it cannot be expected that it ordinarily will be administered with strict regularity, as respects forms and modes of procedure, or, what is more in point, that its proceedings will be fully and accurately entered of record, or its records preserved with the care which the real importance of its business demands. The consequence is that many important documents are mislaid or lost, and the records are not unusually quite imperfect. In such circumstances the security and

certainty of titles to real property appear to demand that the proceedings of probate courts should be upheld, whenever they fairly can be, by the aid of such presumptions as the law in general applies to courts of superior jurisdiction.

Upon these grounds we are of the opinion, as before remarked, that it was the design and effect of our constitution, as a general rule, to place the probate courts of this state, as respects the presumption of jurisdiction, upon the footing of courts of superior common-law jurisdiction. Where a probate court possesses general jurisdiction of a given class of subject-matters, the possession of jurisdiction assumed to be exercised in a particular case falling within that class, is, in collateral proceedings, presumed; or, as the rule is otherwise expressed, the particular case is not intended to be out of its jurisdiction unless it affirmatively appear to be so. And as this court has held in *Turrell* v. *Warren*, 25 Minn. 9, the affirmative appearance must be an affirmative appearance upon the face of the record itself. We have spoken of the rule of presumption as a general rule, because it seems to be somewhat modified by Gen. St. (1866) c. 57, § 47. (Gen. St. 1878, c. 57, § 51.) What the precise extent and effect of the modification is we have no occasion to consider in the present case, in view of our holding that the validity of the appointment of the guardian by whom a given sale is made is not assailable under that section.

6. The application of the views which we have expressed in regard to the *status* of our probate courts to the case at bar is this: The objection is that the guardian was appointed without the required notice of the application therefor. But, as we have before seen, the appointment of the guardian is not one of the proceedings in reference to the sale which the ward can attack under section 47. The general rule of presumption, therefore, applies to it, unqualified in any respect by that section. In a collateral proceeding like the present action, that rule requires jurisdiction to be conclusively presumed, unless the contrary affirmatively appears upon the face of the record itself. *Turrell* v. *Warren*, 25 Minn. 9. Upon the trial below, in proof of the appointment of the guardian, the records of the probate court of Goodhue county were introduced, among which appeared a

record of an order signed by the judge of probate, and dated November 9, 1866, appointing one Hodgman (the person who made the sale in question) guardian of the plaintiff. Also a record of the letters of guardianship, in usual form, issued in pursuance of the order. There is nothing in either of these documents from which it affirmatively appears that the required notice of the application for the appointment of a guardian was not given. The fact that the order reads, "On reading and filing the petition * * * praying that * * * James H. Hodgman may be appointed guardian, * * * and the bond * * * having been duly filed and approved, * * * it is hereby ordered that the said James H. Hodgman be and he hereby is appointed general guardian," etc., does not make it appear affirmatively that no notice was given. Notice may have been given and the statement of the order still be true. No other record evidence as to the appointment was offered. The parol evidence by which the plaintiff proposed to show a failure to give notice was clearly inadmissible, under the doctrine of *Turrell* v. *Warren, supra.*

It follows, in accordance with the rule of presumption before mentioned, that the jurisdictional notice must be conclusively presumed to have been given, and that the appointment of the guardian is therefore to be taken as valid. Whether, as respects this case, the same result would not be reached by the application of the rule as to the incontrovertibility of letters of guardianship, in collateral proceedings, (see *Moreland* v. *Lawrence,* 23 Minn. 84; *Pick* v. *Strong,* 26 Minn. 303,) we need not at this time inquire.

7. Not to interrupt our course of reasoning, we have deferred consideration of certain objections made by the plaintiff, upon the trial below, to the introduction of the record evidence as to the appointment of the guardian. We will consider them now. The record of the letters of guardianship was objected to as unauthorized. They were proper to be recorded both under Gen. St. (1866) *c.* 49, § 8, subd. 3, and under Gen. St. 1878, *c.* 49, § 8, subd. 3. The record of them was, as a record, competent evidence, without producing the original letters, or accounting for their absence. The fact that the transcription of the original letters and order of appointment was made by a clerk of the judge of probate, instead of by the judge *pro-*

*pria manu,* is unimportant. It was made under the direction of the judge, and is therefore his act, and sufficient. The fact that they were transcribed some years after they were originally made out (though it is not to be approved) does not deprive the records of their evidentiary value. They appear to have been made and transcribed under the same judge of probate.

8. We discover no evidence in the case to support the plaintiff's intimation that the guardian was, in violation of Gen. St. (1866) *c.* 57, § 37, (Gen. St. 1878, c. 57, § 41,) directly or indirectly interested in the purchase of the real estate in controversy.

9. The other questions discussed by counsel, in regard to the proceedings of the probate court and of the guardian subsequent to his appointment, appear to be disposed of adversely to the plaintiff by the cases of *Montour* v. *Purdy,* 11 Minn. 278, (384;) and *Rumrill* v. *First Nat. Bank,* 28 Minn. 202.

From the foregoing views it follows that the judgment of the district court sustaining the guardian's sale was right, and it is accordingly affirmed.

GILFILLAN, C. J., *concurring.* I concur in the decision in this case, on the ground that the evidence offered by the plaintiff to impeach the jurisdiction of the probate court—to wit, of the non-receipt of notice—would have been entirely ineffectual to overcome the presumption of jurisdiction. The evidence was competent, but the offer did not go far enough to make it material. As to the *status* of the records of probate courts, and as to the meaning of the phrase "by the probate court having jurisdiction," in Gen. St. 1878, c. 57, § 51, subd. 1, my views are these:

*First.* That the judgments, decrees and orders of these courts stand generally upon the same footing as the judgments, decrees and orders of other domestic courts of superior jurisdiction, and, except as otherwise provided by statute, are unimpeachable in collateral actions; not because the constitution declares them courts of record, but because they are, in respect to the matters which the constitution places within their jurisdiction, domestic courts of superior jurisdiction.

*Second.* That it is competent for the legislature to change the rule of presumption applied to proceedings of all or any domestic courts of superior jurisdiction.

*Third.* That section 51 referred to does change the rule of presumption as to judgments, decrees and orders of probate courts, in the case provided for in it, by permitting the jurisdiction to be assailed; that is, it takes away the conclusive character of the presumption, leaving it only *prima facie*.

*Fourth.* That in subdivision 1 of section 51, which reads, "that the executor, administrator or guardian was licensed to make the sale by the probate court having jurisdiction," the words "by the probate court having jurisdiction" do not mean a probate court capable of obtaining jurisdiction of the property within whose jurisdiction and power it might be brought, but the probate court whose jurisdiction has attached to the estate or property which it directs to be sold. This attaches in the case of deceased persons by the proceedings provided by statute for probate of the will or appointment of the administrator, and in case of guardianship by the proceedings to appoint the guardian; and just at that point, and only at that point, as I think, the statute intended that in the case mentioned the jurisdiction may be assailed.

It may be attacked either by showing that the court was not the proper one to entertain the proceedings, or that the notice prescribed by statute was not given.