WILLIAM G. STAHL *vs.* JOHN J. MITCHELL and others.

July 24, 1889.

Judgment—Court of Superior Jurisdiction—Presumption.—A court of record, which has by statute all the power that any court could have over a certain subject of jurisdiction, especially if it be a subject of jurisdiction under the general rules of law or equity, is, as to cases within that class of cases, to be regarded as a court of superior jurisdiction, within the rule that attaches to the judgments and decrees of such courts the presumption, in collateral proceedings, of jurisdiction in the particular case.

Same.—Appointment and Discharge of Assignee for Creditors.—An order or decree of a court appointing A as assignee in place of and as the successor of B, the former assignee, in an assignment for the benefit of creditors, impliedly discharges B as assignee.

Same—Statute held Part of a Deed of Assignment for Creditors.—A resident of Pennsylvania, owning lands in Pennsylvania, Ohio, Iowa, Wisconsin, Minnesota, Kansas, and Nebraska, executed to one also a resident of Pennsylvania a voluntary assignment of all his property for the benefit of his creditors. The statutes of that state then in force gave to the courts of common pleas jurisdiction over such trusts, and power, upon application by bill or petition and upon notice, to discharge such assignees and appoint their successors, and provided that upon the appointment of such successor all the trust estate and effects whatsoever should be forthwith and without any act or deed passed to and vested in such successor. *Held*, that the statute as to the discharge of such assignees, the appointment of successors, and the vesting of title in the successors, entered into

and became a part of the contract of assignment, as though the latter had expressly vested the power to discharge and appoint in the court, and had provided that upon its making such appointment the title should at once pass to the successor appointed. So that when the court discharged the original assignee and appointed his successor, the appointment was effectual, and the title vested in him, under and by virtue of the deed of assignment, as fully as though the power had been vested in and exercised by an individual.

Plaintiff brought this action, in July, 1885, in the district court for Ramsey county, to quiet his title to the S. W. ¼ of the S. E. ¼ of section 18, town 29, range 22, vacant and unoccupied land, in that county. The defendants other than Mitchell, (who did not appear,) are the widow and heirs-at-law of one James Blakely, late of Allegheny county, Pennsylvania, who died in June, 1882. The plaintiff also claims under James Blakely, his chain of title being as follows: On November 25, 1857, James Blakely, being owner in fee of the land, made a deed of assignment of all his property (his wife joining) to the defendant Mitchell, (also of Allegheny county,) in trust for the benefit of his creditors. At the time of making the assignment Blakely owned large tracts of land in Pennsylvania, Ohio, Iowa, Wisconsin, Minnesota, Kansas, and Nebraska, and a large amount of personal property. Mitchell accepted the trust and acted as trustee till February, 1858, when the court of common pleas of Allegheny county, at his request and pursuant to his resignation, discharged him from the trust. On March 9, 1858, the same court appointed one William H. Campbell, of the same county, as trustee in his place. Campbell accepted and qualified as trustee, and acted as such with the full knowledge and consent of Blakely and his creditors and all persons interested in the trust. On December 12, 1861, Campbell, as trustee and in execution of the trust, sold and conveyed the land in fee to one Wm. Badger for $202, which was its fair value, the deed being executed and delivered at Pittsburgh, Pa. On January 18, 1862, Campbell filed in the same court of common pleas his final account as trustee, in which he duly accounted for the price received on the sale to Badger, and on February 22, 1862, after notice as required by the court, his account was confirmed without objection. On October 11,

1862, Campbell, having fully executed the trust, applied to the same court for his discharge, and the court set the matter for hearing on November 8, 1862, ordering notice to be given, etc. On November 8, 1862, notice having been given as required, the court made an order discharging Campbell. On April 9, 1885, Badger conveyed the land in fee to the plaintiff.

Upon these facts, and the findings as to the laws of Pennsylvania recited in the opinion, *Simons*, J., (before whom the cause was tried without a jury,) ordered judgment for plaintiff, on the ground that as the land had been appropriated to the payment of James Blakely's debts, pursuant to his intention in making the assignment, his widow and heirs are estopped from claiming title thereto. On defendants' motion a new trial was granted on the ground that it was not found as a fact, and did not appear by the evidence, that Badger, when he bought, was ignorant of the true state of the title or was in any way deceived in relation thereto, and therefore an essential element of equitable estoppel was wanting. From the order granting a new trial the plaintiff appeals.

*H. C. Eller* and *W. A. Barr*, for appellant.

*J. W. Pinch* and *W. C. Goforth*, for respondents.

GILFILLAN, C. J. From the findings of the court below the following facts appear:

On the 25th of November, 1857, one James Blakely, then a resident in the county of Allegheny and state of Pennsylvania, and the owner of large tracts of land situated in the states of Pennsylvania, Ohio, Iowa, and Wisconsin, and the territories of Minnesota, Nebraska, and Kansas, made, his wife joining, a voluntary deed of assignment, conveying all his property, wherever situated, to one John J. Mitchell, also a resident in said county and state, in trust for the benefit of his creditors.

The statutes of Pennsylvania then in force provided:

" In every case in which any person shall make a voluntary assignment of his estate, real or personal, or any part thereof, to any other person or persons in trust for his creditors or some of them, it shall be the duty of the assignee or assignees, within thirty days after the execution thereof, to file in the office of the prothonotary of the court

of common pleas in the county in which the assignor shall reside, an inventory or schedule of the estate or effects so assigned, accompanied by an affidavit of such assignees that the same is a full and complete inventory of such estate and effects as far as the same has come to their knowledge."

" It shall be lawful for the court of common pleas of such county, or for any judge thereof in vacation, to appoint two or more disinterested and competent persons to appraise the estate and effects so assigned."

"The appraisers so appointed, after having first taken an oath or affirmation before some person having authority to administer oaths to discharge their duties with fidelity, shall forthwith proceed to make an appraisement of the estate and effects assigned, according to the best of their judgment, and, having completed the same, shall return the inventory and appraisement to the court, where it shall be filed of record."

" The assignee or assignees aforesaid shall, as soon as the inventory or appraisement shall have been filed, give a bond or bonds, with at least two sufficient securities to be approved by one of the judges of said court, in double the amount of the appraised value of the estate so assigned." " The bond so given shall be taken in the name of the commonwealth of Pennsylvania, and the conditions thereof shall be as follows, viz.: " " And such bond shall be filed in the office of the prothonotary of the said court, and shall by him be entered of record, and shall be issued to the use of all persons interested in the property assigned."

"The court having jurisdiction as aforesaid shall have power, upon the application by bill or petition of any assignee or trustee setting forth such facts as in equity would entitle him to relief, to discharge him from the trust: *provided*, that no such discharge shall take place unless the accounts of said assignee or trustee shall have been duly settled or confirmed as aforesaid so far as he shall have acted in the trust, nor unless notice of such application shall have been given to all parties interested, either personally or by advertisement in such public newspaper as may be directed by the court, nor until such assignee or trustee shall have surrendered the trust estate remaining

in his hands to some other assignee or trustee, or other person appointed by the court to receive the same, and shall have performed all such other matters as may be required in equity."

"The several courts having jurisdiction as aforesaid shall have power to appoint assignees or trustees as aforesaid in the following cases, viz., when any sole assignee or trustee shall die, or be dismissed by the court from the trust, or shall be discharged by the court therefrom." "The power of appointment as aforesaid may be exercised on the application by bill or petition of any person interested in the estate or property which is the subject of the trust, and not otherwise, and after due notice to all parties concerned." "Every assignee appointed by the court aforesaid shall be liable to the same duties, shall have the same powers and authorities in relation to the trust or to the future execution of the same, as the case may be, and shall be subject to the jurisdiction and control of the court in the same manner and to all intents and purposes as his predecessor or predecessors in the trust." "Upon the appointment by the court of any assignee or trustee as aforesaid, and upon his giving security if he shall be so required by the authority of the laws, all the trust estate and effects whatsoever shall be forthwith and without any act or deed passed to and be vested in the succeeding trustee or assignee."

The said John J. Mitchell duly accepted said trust and entered upon the discharge of his duties as assignee under said deed of assignment, and continued under such to act as such assignee until the 13th day of February, 1858, when he presented his petition to the court of common pleas of said county of Allegheny, praying to be discharged from said trust. Thereupon said court, on said 13th day of February, 1858, accepted the resignation of said Mitchell, and entered an order in the records of said court discharging him from said trust. It does not appear from the evidence that any notice by publication or otherwise was given to the parties interested in the matter of said trust, of the application of said Mitchell to be discharged therefrom, nor does it appear that the said Mitchell made a formal conveyance of said trust estate, or any part thereof, to W. H. Campbell, his successor in said trust as hereinafter stated.

On the 9th day of March, 1858, after due notice to the said James Blakely and his creditors, the court of common pleas of said Allegheny county duly appointed one William H. Campbell, a resident of said county, assignee in place of and as the successor of John J. Mitchell in said trust. Said Campbell duly accepted and duly qualified as such trustee, and thereafter, with the full knowledge and consent of the said James Blakely and of the creditors of said Blakely and all persons interested in said trust, proceeded to act as such trustee or assignee in the place of said Mitchell, and in all respects to carry out and fully execute the trusts originally created by said deed of assignment.

In December, 1861, Campbell, as such assignee, conveyed the land in controversy (lying in this state) to one Badger, and the latter afterwards conveyed it to plaintiff.

In addition to the findings of the court as to the statutes of Pennsylvania, it was agreed on the argument here that the court might refer to those statutes, and the brief of each party has numerous references to them. On consulting them we find that the courts of common pleas were courts of record, the jurisdiction of that in Allegheny county in civil actions being limited to cases in which the amount in controversy did not exceed one hundred dollars. In the matter of the control of assignees in the execution of their trusts, and in the removal of assignees and appointment of others to succeed them, in compelling an accounting, and in settling their accounts, the jurisdiction of those courts seems to have been very full. The jurisdiction in controlling assignees for the benefit of creditors appears not only to have been full and to cover every thing which it might be supposed necessary for a court to do in enforcing the due execution of such trusts, but we do not find that the statutes expressly conferred that jurisdiction upon any other court.

The respondent contends, and the court below appears to have decided on the motion for a new trial, that the presumption of jurisdiction did not attach to the orders, decrees, or judgments of those courts in such cases as it does to the records and proceedings of courts of general or superior jurisdiction; that it was therefore necessary, to make the order discharging Mitchell of any effect, to prove,

aside from the record, that notice as required by law of the hearing upon the application for a discharge was given. And as the order appointing Campbell as assignee in place of Mitchell was, as found by the court below, duly made, after due notice to the assignor and his creditors, the further proposition must be relied upon, though it is not in terms made by respondent, that the jurisdiction of the court to hear and determine the application for the appointment of a successor to Mitchell depended on the latter having been previously legally discharged. We do not think this proposition can be maintained. The only question here involved is the due appointment and power of Campbell. There can be no question that the court might in the same order discharge Mitchell and appoint his successor. The order appointing Campbell "assignee in place of and as the successor of John J. Mitchell in said trust" impliedly discharged or removed the latter if he had not been previously discharged. All parties entitled to notice of the hearing which resulted in the order appear to have had it. Mitchell does not appear to have been served with notice, but he was not interested in nor entitled to be heard upon the appointment of his successor. All that he was interested in was his own discharge. And the court had then his petition asking for his discharge—his consent to be discharged; so that notice to him was not necessary to make the order of March 9th effectual as to him, if it is to be construed as an order discharging him. We think the substitution of Campbell in the place of Mitchell as assignee might rest on the order of March 9th.

But we prefer to base our decision as to the discharge upon the order of February 13th.

We have not been referred to any decision of the courts in Pennsylvania as to the character of the court of common pleas, when acting under the statutes regulating proceedings upon voluntary assignments for the benefit of creditors, in regard to the verity that is to be ascribed to their records.; as to whether they are considered as courts of general or superior, or only of limited and special jurisdiction, for the purpose of the rule that gives to the former and withholds from the latter the presumption of jurisdiction of a particular

case of the kind of which they may have jurisdiction. We shall therefore have to determine the question upon the rules laid down by this court when determining it in respect to courts in this state. And in respect to that it is immaterial whether the jurisdiction is conferred and defined directly by the constitution or by a legislative act passed pursuant to the constitution. Nor does it matter that the jurisdiction is limited to specified subjects—most courts are so limited. No better instance could be given of jurisdiction so limited than is afforded by our probate courts. Yet in *Davis* v. *Hudson*, 29 Minn. 27, (11 N. W. Rep. 136,) it was decided that those courts are, in respect to the subject-matters committed to them, courts of general and superior jurisdiction, so that the possession of jurisdiction assumed to be exercised in a particular case falling within such subject-matters, is in collateral proceedings presumed. The reasons given for that decision, aside from the authorities cited in support of it, were that they are courts of record, and that as respects the subjects committed to them in the exercise of an original jurisdiction they have all the power that any court has, and consequently are not inferior to any other court in the exercise of that jurisdiction. Taking these characteristics as the test, it follows that in respect to voluntary assignments for the benefit of creditors, the courts of common pleas in Pennsylvania, when the proceedings on this assignment were had, were courts of general and superior jurisdiction so as to give to their records and proceedings the same verity that would belong to any court of general and superior jurisdiction of that state. They were courts of record. They had, in the matter of controlling the execution of the trust in such cases, all the powers that any court could have had. Indeed, the original jurisdiction in such cases seems to have been exclusively conferred on them. It is to be observed that the statute does not create a new subject of jurisdiction and give to a particular court power over it. It merely vests in the courts of common pleas jurisdiction that would otherwise belong to the ordinary courts of chancery.

Upon the proof of the order of February 13th, the presumption that the court had jurisdiction to make it arose, and, unless the presump-

tion was rebutted by proofs, it established the fact that Mitchell was discharged.

But respondent claims that the record proves affirmatively that the court had not jurisdiction, because it shows that the petition was presented to the court on the 13th, and on the same day the order was made, from which it is urged that notice could not have been given between the presenting of the petition and the making of the order. Had the statute provided, as it does not, that the notice must be given after presentation of the petition, there would be some force to the argument. We see nothing in the statute to prevent notice being given that the petition would be presented on a specified future day, and no reason is apparent why such a notice would not be a compliance with the statute. And besides the record does not show but that all the parties interested and entitled to be heard appeared on the hearing.

We conclude, therefore, that so far as the laws of Pennsylvania could control the matter, Mitchell was legally discharged and Campbell legally appointed to succeed him:

Thereupon arises the question of Campbell's power, as such substituted assignee, to sell and convey real estate situated in this state; that is, of his succeeding to the title to the real estate for the purposes of the trust. With this question we have had some difficulty. There is no question that the judgment or decree of a court in another state cannot of its own force affect in any way the title to real estate in this state. The power of courts to affect real estate *in rem* is confined to that which lies within their territorial jurisdiction. So that though a court of another state may have by the law of its jurisdiction the power which our district courts have in certain cases to pass the title to real estate from one of the parties to another by mere operation of its judgment, it could not exercise that power in respect to real estate situated in another state. For the transmission of title to real estate must be according to the law of its *situs*.

Treating the orders discharging Mitchell and appointing Campbell as nothing more than the orders or decrees of the court of a foreign jurisdiction, having only the force and effect that the laws of such

jurisdiction could give them, they would be entirely ineffectual to pass the title to lands in Minnesota. Can they have by contract, by reason of the trust deed, any effect by way of passing the title, beyond that which they could have as orders or decrees of a court?

It is a general rule governing express trusts,—one that does not depend on where the trust deed is executed, nor on what the trust property is, nor on where it is situated,—that the person who creates the trust may mould it into whatever form he pleases, and may determine in what manner, in what event, or upon what condition, the original trustees may retire and new trustees be substituted, and make any legal provision which he may think proper for the continuance and succession of trustees during the continuance of the trust. Perry on Trusts, § 287. And within this rule he may not only in the trust deed designate who, in case of a vacancy in the office of trustee, shall have power to appoint a successor, but may also provide that the title shall pass to the successor by the mere fact of his appointment pursuant to the trust deed. If the trust deed contains no provision for the appointment of successors to outgoing trustees, the court of chancery in its ordinary jurisdiction over the subject of trusts will exercise the power of appointment, and require a conveyance to the new trustee. And if the trust deed vests the power of appointment but makes no provision for the passing of the title, a formal conveyance to an incoming trustee is generally regarded as necessary. But none is necessary where the trust deed provides that the title shall pass to the new trustee upon his appointment. In that case he takes and holds under and by virtue of the deed of trust as though originally made to him. Two cases, among many, in which this was held, are those of *Nat. Webster Bank* v. *Eldridge*, 115 Mass. 424 and *Ellis* v. *Boston, Hartford & Erie R. Co.*, 107 Mass. 1. So, but for the statute, had this trust deed in terms vested in the court of common pleas of Allegheny county the power to appoint a successor to the trust in the place of the one resigning or discharged, and had it provided (as the statute provided) that upon the appointment, "all the trust estate and effects whatsoever shall be forthwith and without any act or deed passed to

and be vested in the succeeding trustee or assignee," then the vesting of the title in the new trustee or assignee would have been under and by virtue of the deed of trust, and not by force of any determination, order, or decree of the court as such. Acting under the power of appointment and not solely upon the jurisdiction conferred upon it by local law, it could not be objected that some of the real estate lay beyond its local jurisdiction as a court, any more than, if the power were vested in a private person, it could be objected that some of the real estate lay beyond the territorial jurisdiction of the courts of his domicil.

The law of the jurisdiction in which the parties to a contract reside and in which it is executed, especially if it is to be performed within that jurisdiction, is usually, so far as it affects the substance of the contract, to be deemed a part of it. We use the words "substance of the contract" to indicate the rights and obligations attaching to it, as distinguished from mere matters of remedy. This is so because the parties are presumed, unless the terms they use exclude the presumption, to contract with reference to such law and to the rights and obligations it imposes on such contracts. And this is especially the case where the rule established by the law is peremptory, and leaves no power in the parties to provide the contrary. A familiar instance of the application of the principle referred to is the case of a power of sale in a mortgage. While the law in force at the time of the execution of the mortgage as to the mere mode of exercising such a power, except in so far as such mode may be essential to its beneficial character, does not enter into and become a part of the mortgage, for the reason that it relates only to the remedy, its provisions regulating the rights of the parties upon its exercise—such as the right to redeem, and the time within which and the terms upon which redemption shall be made—are, as is now well established, a part of the contract.

Taking the reason for the rule that the law enters into and becomes a part of the contract to be that the parties are presumed to so intend, this case, so far as relates to the discharge of the original assignee, the appointment of his successor, and the consequences of such ap-

pointment in transferring the title, would seem to come within the rule. The assignor and original assignee both resided in Pennsylvania. Where the creditors resided does not appear, but it is to be presumed in that state, though that we do not consider material. Although isolated acts by the assignee, such as conveyances of real estate, were to be done within, or at any rate according to the laws of, other states and territories, there can be no question that the general business of the assignment was to be done in the state of Pennsylvania where the assignor and assignee resided. The assignment is therefore to be regarded as a contract to be performed in that state. This is necessarily so unless we are to suppose that the assignor intended to create as many different trusts as there were states and territories in which his real estate was situated. The parties must be presumed to have intended compliance with the laws of that state. They knew that by the laws there in force the power to discharge the assignee and to appoint his successor would vest in the court of common pleas, and that upon its exercising the power of appointment the title would pass without any conveyance. And they must be presumed to have intended that it should vest and be exercised by that court in the manner prescribed by the laws of that state, so long as they permitted the court to hold and exercise the power.

It does not follow that all of the law of the state with reference to voluntary assignments for the benefit of creditors became a part of the contract. What may be termed the remedial part of it, such as the provisions for compelling the assignee to account, did not. Such matters are not matters of contract. If there had been no statutes as to such matters, the parties could not by their contract have affected the jurisdiction over them of courts having chancery powers. But provisions for discharge of trustees, the appointment of successors, and the passing of title from outgoing to incoming trustees, are, in general, matters of contract. The provisions of the statutes on those subjects may therefore be deemed to have become part of the contract.

It follows from what we have said that Campbell was properly appointed assignee, and that upon his appointment the title to property,

wherever situated, vested in him, because the assignment intended that the court of common pleas should have the power of appointment, and that upon its appointment the title should vest.

Order reversed.

NOTE. A motion for reargument of this case was denied October 3, 1889.