(53 South. 359.)

No. 17,884.

PRINGLE v. PRODUCERS' TURPENTINE CO.

(June 20, 1910. Rehearing Denied Oct. 17, 1910.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 30*)—DISCHARGE OF SERVANT—GROUNDS.

As plaintiff ordered its manager to do work which properly is the work of a mechanic and not contemplated by the contract to be that of the manager, his manner of doing it will not afford grounds for discharging him in the absence of proof that he was guilty of gross negligence. Leatherberry v. Odell (C. C.) 7 Fed. 645.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 32; Dec. Dig. § 30.*]

2. MASTER AND SERVANT (§ 30*)—DISCHARGE OF SERVANT—GROUNDS.

As the mistake of the manager was an error of judgment, and defendant made no complaint until months after, its failure to complain earlier will be held to be a condonation, and the mistake will not serve as a reason for discharging him. Sharp v. McBride, 120 La. 143, 45 South. 41.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 36; Dec. Dig. § 30.*]

3. APPEAL AND ERROR (§ 1147*)—MASTER AND SERVANT (§ 30*)—MODIFICATION OF JUDGMENT — TIME FOR MOTION — DISCHARGE OF SERVANT—GROUNDS—AMENDMENT OF JUDGMENT.

As plaintiff conducted the business of the defendant most successfully during the first year, and there is nothing to show that he was indifferent, grossly careless, or negligent, his minor mistakes of judgment will not serve as a sufficient legal reason for discharging him before the termination of his contract. It would be otherwise if it had been established beyond question by the evidence that his negligence, or ignorance, had caused a loss to the defendant. Plaintiff moved to amend judgment on appeal. Such a motion should be timely fixed, i. e., 3 days before case is fixed for argument.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4482; Dec. Dig. § 1147;* Master and Servant, Cent. Dig. § 32; Dec. Dig. § 30.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by H. T. Pringle against the Producers' Turpentine Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Morphy & Miller, for appellant. McCoy, Moss & Knox, for appellee.

BREAUX, C. J. Plaintiff, former manager of the defendant company, brought this suit to recover the sum of $9,727.10, with interest thereon at the rate of 5 per cent. per annum from the 11th day of February, 1909.

He began his term of employment on the 7th day of October, 1907, to end on the 6th day of October, 1912, at a salary of $208.33 per annum.

He was an employé of the company about three months before he contracted with the company to become its manager.

Plaintiff obligated himself to produce the first year (upon 5,000 acres of pine land, averaging not less than 17,000 feet of long leaf yellow pine timber to the acre) not less than 1,800 barrels of spirits of turpentine, of 50 gallons each, and 5,400 barrels of rosin of 500 pounds each, at an expenditure not to exceed $144,800.

The right of terminating the contract prior to the expiration of five years was reserved by defendant upon its paying to plaintiff the balance due him as salary for the unexpired portion of the five years from the date of the discharge.

Plaintiff produced the first year 2,000 barrels of spirits of turpentine of 50 gallons each and over 6,000 barrels of rosin of 500 pounds each at an expense of $103,733.

The return of the year's business was quite handsome.

He produced over the quantity he had bound himself to produce, and the company realized a larger sum than he had promised to produce by a considerable amount.

The defendant on the 11th day of February, 1909, discharged plaintiff.

According to one of the provisions of the contract, plaintiff was given the right to subscribe for 100 shares of the capital stock of the defendant company by furnishing for it 10 notes of $1,000 each.

The condition was that, if interest was paid plaintiff thereon annually as well as one of the notes of $1,000, the remaining notes should be extended from year to year and stock issued to plaintiff for the full amount paid upon the principal indebtedness.

It was further provided, if the defendant chose to terminate the contract, it would, in addition to paying the salary for the unexpired term, refund the interest paid upon the stock.

Plaintiff paid the company $1,800, $1,000 upon the purchase price of the stock, and $800 upon the interest for one year, $80 of which was upon stock of $1,000, for which he held a certificate of stock. It being stock issued, it did not come within the stipulation of a return by the company of that sum to him. He held that stock, it being issued to him. The remaining $720 was interest upon the $9,000 of stock which had not been paid for by plaintiff, the subscription to which was canceled by defendant.

Plaintiff claims the $720 under the terms of the contract on which he sues.

Defendant answered, denying all indebtedness to plaintiff, and, as to the $720, claimed by plaintiff, amount paid as before mentioned, defendant alleged that as it was entitled to terminate the contract of employment, under the terms of the contract, it had the right to retain the $720 as its own.

The judge of the district court rendered judgment in favor of plaintiff for the amount claimed, with 5 per cent. interest from the date of the judgment.

The defendant appeals.

In answer to the appeal, plaintiff in this court asks for an amendment of the judgment by allowing interest upon the amount thereof from the 11th day of February, 1909, the date on which he was discharged.

The testimony sustains plaintiff's contention regarding the profits of defendant during the year 1908. He has fully complied with his guaranty in that respect.

A thorough investigation of the business for the year during which plaintiff was manager shows a profit of 33 per cent. on the capital invested.

The defendant, despite the handsome profit, seeks to sustain the position that plaintiff was wanting in skill and competency as a· manager; that his management was not businesslike and satisfactory; that it was justified in peremptorily discharging him.

A number of acts of alleged mismanagement are alleged.

The company was organized a short time prior to 1908.

A short time after it had commenced operating under the management of plaintiff, the president and board of directors wrote complaining letters to plaintiff.

They were answered by him in temperate language.

He had had years of experience. His former employers testified as to his ability in turpentine producing business.

The interests of defendant company were large.

It looks very much as if the president and board at that time were overconcerned and overapprehensive that the operations of which they knew little, if anything, were not properly managed. It was a new business to them.

To their complaining letters to plaintiff he answered, substantially, that he was doing all he could for the success of the plant.

The complaints continued until February of the second year; he was discharged.

The favorable result obtained the first year

under the management of the plaintiff is not very compatible with the board of directors' idea of incompetency of the manager.

The defendant offered to prove that under the management of plaintiff's successor there was greater success and larger returns.

The district court, on plaintiff's objection, excluded the testimony.

It may be that larger profits were obtained. That would not of itself reflect on the management during the first year.

The first year the expenses are larger; the hands are not thoroughly drilled in the performance of their work; wages are higher, all being new.

The duties of the manager are heavier.

Plaintiff, though young, from earliest manhood had been employed on turpentine producing farms. He had been employed by different companies.

A number of his employers testified to his competency.

Whether competent or incompetent, the stockholders were not pleased. They were prone to blame. They evidently had lost confidence. In that situation, all faults came, as the board thought, from the manager.

The still was destroyed by fire. It is in evidence that the materials of a still are easily ignited. In consequence, it happens that a number of stills are destroyed by fire.

Plaintiff employed a watchman, Hall, who was given to pipe smoking. It was suspected that his pipe was the cause of the destruction of the still.

The manager was blamed for employing as watchman a man who smoked.

It became evident in time that the watchman's pipe had naught to do with the fire.

The manager had some débris burnt near the still in order to clear up the place. That met with some disapproval from stockholders.

A serious accident occurred on the 22d of June of the year of plaintiff's employment, whereby 4,000 gallons of turpentine, worth about $2,000, were lost.

The details of the cause of this loss are:

Plaintiff sent men to build a platform at the end of the storage tank. These men while at work broke the connecting pipe.

There was a large pipe connecting with the tank to let the turpentine into the car (locomotive). An extra valve was put in near and just outside of the tank, so that, in case of accident, such as a break of the pipe, the flow of turpentine might be shut off.

Plaintiff was ordered by defendant's president to raise the pipe higher from the ground.

Plaintiff complied with the order and raised the pipe. In raising it, he left the work in a defective condition.

The pipe broke, as before mentioned, and by the break the loss was occasioned.

To go further into details, it appears that, when the men were operating the appliance in loading a car, the men let slip the weight which controlled the lever. It got away, struck the discharge pipe near the valve, and broke it at the elbow.

It was at that point, had the valve been in its proper place, that it could easily have been closed and all leakage stopped.

It had not been put in by a mechanic.

The plaintiff was not a mechanic. The appliances were to be furnished by the defendant. No instruction was given to plaintiff how to raise the pipe and where to place the valves. He testified that he could not follow the lines of the blueprint which had been sent him to guide him in the work. They were not clear to him.

It was a mistake on the part of plaintiff to undertake to make the repair and raise the pipe. Still, it must be borne in mind, it was not the mistake of a mechanic fully informed as such. He had no experience with storage tanks and discharging pipes and safety valves. Whatever negligence there was, it has every appearance of common negligence between plaintiff and defendant.

It is another mistake growing out of an

overzeal of a manager not sufficiently a mechanic to do the work as it should have been done, and on the part of defendant in ordering one not a mechanic to do the work of a mechanic.

The order to him and the delay which elapsed after the accident conclude defendant from successfully urging that the fault was that of the manager, who was incompetent, we take it, as a mechanic; but by this it does not appear that he was incompetent as a manager of a turpentine plant.

Failure to perform this work to the satisfaction of defendant and failure to perform it so as to entirely safeguard defendant's interest cannot be considered as ground sufficient to deprive plaintiff of the conditions of his contract. Leatherberry v. Odell (C. C.) 7 Fed. 645.

Months elapsed and no complaint was made.

It has every appearance of condonation of whatever error of judgment there was, and it was an error of judgment. Sharp v. McBride, 120 La. 143, 45 South. 41.

Immediately after the pipe had broken, plaintiff did all he could to minimize the loss.

The defendant charges the plaintiff with incompetency because he did not, as urged by it, properly grade the rosin.

The manager had graded the rosin. One of the customers complained. It gave rise to comments.

No one asserted that there was an intentional wrong committed by the manager, nor does it appear that it occasioned loss.

Differences may arise about grading and mistakes be made.

Unless they grow out of dense ignorance or gross negligence, they will afford scant ground to discharge an employé several months after a very successful year's operation.

The discoloration of the oil because the car in which it was shipped had not been cleaned and failure to shellac the car are other complaints urged.

The manager was not called upon by the president for an explanation at the time.

He might have been warned not to allow such shipment. If the offense was grave, he might have been discharged at the time, not months afterward.

Serious complaint was urged about failure to raise higher the cups on the trees, or containers, in which the turpentine drips.

There is question whether they should have been raised. The testimony is not all one way on the subject.

We have read and considered the testimony and arrived at the conclusion that it is easy to criticise and suggest ways in which revenues ought to be increased.

A series of mistakes may be suggested conclusive in the judgment of inexperienced persons.

This camp constructed by the manager should not have been constructed at the place it was.

The still leaked and in other respects was defective.

One of the employés overdrew his account in a sum of about $126.

This could have been prevented by the manager is the contention.

Those who are familiar with the small returns made by industrial enterprises know that results are to be considered, and not every error in management particularly when the manager binds himself to produce a stipulated return as follows: If he did not accomplish results set forth in estimates "A" and "B," the "party of the first (the company) is at liberty to cancel his agreement and terminate the service of the said party of the second part, without further recompense to the party of the second part."

We are not inclined to consider these acts lightly. There are reciprocal duties.

If plaintiff had rendered himself disagreeable—

If he had by his negligence or ignorance caused a loss, established beyond question by the testimony, a different conclusion would be justifiable.

It has not occurred to us, while reading the many pages of the two transcripts, that the testimony showed indifference and a desire to cause the least loss or wrong to his employer.

He to some extent was his own employé.

He had employed the hands, and they were paid under his direction.

It may be that this payment should not have been made, and that plaintiff is indebted for the amount.

There is no demand except to deprive him of the salary under the contract.

The amount thus paid cannot be considered, under the circumstances, in the light of an act of incompetency justifying his discharge.

The plaintiff prayed for an amendment of the judgment allowing him interest from a date earlier than allowed in the judgment of the district court. The prayer to amend was filed on March 17, 1910, on the day that the case was called for argument, the first time. It should have been filed, to be in time, three days before the case was fixed for argument.

See Act No. 103 of 1908.

For reasons stated, the judgment is affirmed.