## SIGNORELLI v. MORICE.

### No. 1713.

Court of Appeal of Louisiana.  First Circuit.

May 6, 1937.

Labbe Guidry & Willis, of St. Martinville, for appellant.

Lawrence Simon, of ·New Iberia, for appellee.

OTT, Judge.

On October 9, 1934, plaintiff and defendant entered into the following agreement:

"It is hereby agreed between Julian Morice and Henry Signorelli, the said Julian Morice agrees and binds himself to employ the said Henry Signorelli for a period of one year, beginning ·October 1st, 1934 and terminating September 30th, 1935, the 'above agreement is binding providing the St.· Martin Winery is still operating, in· the event St. Martin Winery discontinues operations, of its plant, this agreement in full is hereby considered void.

"Julian Morice agrees to pay the. said Henry Signorelli the amount of $10.00 per week running time, and also further agrees to compensate the latter in the form of bonus or commission to the amount of 5% on all gross sales sold in the above mentioned winery, covering the above mentioned stipulated time.

"Henry Signorelli agrees to place his full time in seeing what is necessary to be done, and take responsibility of the full operation of the plant, he further agrees to employ extra help in said winery, only when it (is) absolutely necessary, not at his expense."

On December 10, 1934, the parties entered into a supplemental agreement whereby it was agreed that in case there was any loss of wine due to the negligence of plaintiff, Henry Signorelli, he was to be responsible for 50 per cent. of such loss.  It was also agreed that the parties would settle monthly on the 5 per cent. commission on the basis of 2½ cents per gallon on all wine sold, instead of 5 per cent. of · all gross sales, as fixed in the original contract;  all wine to be figured at 50 cents per gallon net.

Plaintiff filed a suit against defendant on April 30, 1935, in which he alleged that he entered upon the employment covered by the original contract, and rendered faithful service to the defendant, but that said defendant unlawfully discharged him on March 30, 1935, without cause and without any serious ground of complaint.  Plaintiff prayed for judgment against defendant in the sum of $645, being his salary at $10 per week for the unexpired portion of the period of em-

ployment from April 1st to September 30, 1935, and for commissions on sales from March 1st to the end of the contract, a period of seven months, at $55 per month, the average commissions for the previous months.

On May 13, 1935, defendant filed an exception of no cause or right of action, and also an exception of prematurity grounded on the allegation that plaintiff's action was premature, at least as to some of his demands. Thereupon, plaintiff filed a supplemental petition, reserving his right to sue for commissions on sales should the court hold that his claim therefor was premature.

It appears that no further action was taken in the case until October 2, 1935, when plaintiff filed a second supplemental petition in which he alleged that the full period for which his services to defendant were to continue had expired, and that the winery had operated continuously from March 1st to September 30, 1935, and, accordingly, all commissions for that period were then due him.

The exception of no cause or right of action was overruled in March, 1936, after which defendant filed an answer admitting the agreement, and the fact that plaintiff had worked thereunder to March 30, 1935, but defendant denied that he had discharged plaintiff, but that plaintiff had quit on his own accord. In the alternative and in the event the court should hold that defendant discharged the plaintiff, the defendant set up in his answer various acts of negligence, incompetency, and carelessness on the part of plaintiff to justify the discharge.

Judgment was rendered in favor of plaintiff for $609.45, from which judgment the defendant has appealed.

### Exception of No Cause or Right of Action.

The exception of no cause or right of action is based on the theory that the contract sued on is null and void because it contains a potestative condition on the part of the defendant, in that the contract is conditioned on the continued operation of the winery; that this condition, in turn, is dependent on the will of the defendant who owns the winery, and who could, at his will, discontinue the operation of the winery and thereby terminate the contract.

Article 2024 of the Civil Code defines a potestative condition as one that makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or hinder. Article 2034 makes an obligation null which has been contracted on a potestative condition, on the part of him who binds himself. But this last-mentioned article of the Code is limited by the following article, 2035, which limits the nullity of the obligation to such contracts containing a potestative condition depending solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition is not void.

When plaintiff's second supplemental petition was filed, the full term of the contract had expired, and it was shown, by allegations and proof, that the winery continued to operate throughout the full period covered by the contract. It is, therefore, evident that, whatever may have been the potestative nature of the condition making the validity of the contract depend on the continued operation of the winery, it remains a fact that the defendant did not exercise any rights given him under the contract to discontinue operations and thereby terminate the contract. The contract has thus become fait accompli, and, assuming that it did lie within the power of defendant to terminate the contract at his will by closing the winery, he did not do so, and for us to now enter into a consideration of what might or might not have happened had he closed the plant, would be for us to enter into a discussion now purely academic. Any one wishing to pursue further a study of the history and effect of the potestative condition in contracts under our law is referred to volume 5, Tulane Law Review, 396, and volume 6 Tulane Law Review, 23 et seq., where a full and interesting review of the whole subject is given.

■■ A condition in a contract, which has been fulfilled, ceases to be potestative, and where a contract has been made subject to a potestative condition, and the condition is fulfilled, such contract becomes binding and enforceable. Board of Levee Com'rs v. Concordia Abstract & Realty Company, Ltd. et al. 181 La. 373,

159 So. 588; Oliver et al. v. Home Service Ice Company, Inc. (La.App.) 161 So. 766. The exception of no cause or right of action was properly overruled.

### On the Merits.

The defendant averred in his answer that the plaintiff voluntarily quit his job as wine maker for defendant. Plaintiff testified that defendant paid him on March 30, 1935, for a week's salary and tendered him a check for $11 to cover the commissions due for March, but he (plaintiff) refused to accept this check for commissions for the reason that defendant had deducted something over $45 without consulting him, being the amount that defendant claimed that was due him by plaintiff for one-half the losses in wine caused by the negligence of plaintiff; that defendant then told him that he need not come back to work, whereupon, plaintiff asked defendant to give him a discharge paper. Defendant then had a notice of discharge written and handed it to plaintiff. This notice is dated March 30, 1935, and reads as follows: "Mr. Henry Signorelli: This hereby serves as notice that your services under my employ ceases, for the reason of not giving satisfaction." Signed by Julian Morice.

Defendant attempts to explain the above notice of discharge by saying that plaintiff was not satisfied with the offered settlement for the commissions and told defendant that he was going to quit, and asked for a discharge paper, which defendant had written and gave it to plaintiff. In view of this written notice of discharge which defendant admits signing and giving to plaintiff, we think the trial judge correctly held that plaintiff was discharged by the defendant. It is hardly reasonable to believe that the defendant would have given plaintiff this written notice of discharge if the plaintiff had voluntarily left his job.

This brings us to a consideration of the alternative defense set up by defendant, viz., that he had ample cause for discharging plaintiff. In his answer, defendant has set up and detailed some eleven different acts of negligence, incompetence, and carelessness from November, 1934, until the time of plaintiff's discharge on March 30, 1935. The trial judge took up and discussed all of these various acts of alleged negligence and incompetency of plaintiff and reached the conclusion that the proof did not show any of them to be sufficiently serious and important to justify the discharge of plaintiff before the expiration of the term of the employment fixed in the contract.

It would serve no useful purpose for us to review all of the evidence produced by both sides on these various charges of negligence on the part of plaintiff. We have carefully examined this evidence and fail to find any manifest error on the part of the trial judge in his findings of fact. We will mention only a few of the more serious complaints assigned by defendant as grounds for the discharge of plaintiff, in order that the nature of the defense may be better understood.

The first complaint against plaintiff is that, in November, 1934, he used a pump that was leaking in transferring wine from the fermenting tank to the storage tank, thereby causing the loss of several gallons of wine; that plaintiff should have stopped the pump and repaired the leak with proper packing.

The evidence shows that the pump did leak and there was a loss of some 20 or 30 gallons of wine. Plaintiff explains his failure to stop the pump and repair it by saying that, had he done so, there would have been the risk of exposing the wine for considerable time, thereby running the risk of having some of the wine sour; that the operation of transferring the wine was almost completed when he observed the leak, and, in his judgment, it was better to waste a little wine by leakage rather than run the risk of losing more by souring. About 1,000 gallons were transferred during this operation, and, considering the fact that plaintiff used his judgment as an experienced wine maker, we cannot say that his act in this respect showed negligence.

Another act of negligence charged to plaintiff is that, on January 29, 1935, in transferring wine from the fermenting tank to the storage tank, plaintiff used a broken screen, which permitted a lot of mash or sediment to come into the storage tank, causing the wine to be of inferior quality, by reason of which there was a loss in sales. The trial judge in passing on this complaint says:

"There is no merit to this complaint. Plaintiff denies the use of a broken screen, and no witness connects him with that fact directly. However that be, it is amply shown that the pressure of the pipe against the screen may easily perforate

the latter, and being submerged cannot be detected. There is not any proof that this act, if true, was a result of negligence, or inefficiency, and neither can it be inferred.

"The inferior wine complained of was reflected by the sales, so defendant testifies. Yet on examining the sales of the wine charged to be inferior, it is seen that the highest sales peak was reached during that period of time."

Some of the other complaints appear so insignificant as to be almost frivolous. For instance, defendant charges that plaintiff left open two barrels of wine in November, 1934, causing the wine to sour; that in January, 1935, he wasted 3 gallons of wine by throwing it into the ditch; that on several occasions plaintiff placed the barrels containing wine on the barrel rack with the bungholes toward the wall, instead of facing the bungholes outward, so that the wine could be drawn out without turning over the barrels; that in February, 1935, plaintiff carelessly broke four jugs of wine on the same day; that in March, 1935, plaintiff threw into a ditch about 100 gallons of lees which, according to approved methods, should have been put in a barrel to settle, in order to. avoid waste.

Suffice it to say that plaintiff made an explanation of all these charges which was entirely satisfactory to the trial judge, and our examination of the reasons assigned by the judge does not lead us to the conclusion that he was in error in his findings from the evidence given in the case.

One other complaint deserves some comment. Defendant claims that plaintiff lost or destroyed approximately 500 gallons of wine through carelessness and negligence during the six months that he worked for defendant. There might be sufficient evidence to justify the conclusion that there was about this amount of loss in wine during this six-month period, but there is certainly not sufficient evidence in the record to justify the conclusion that this amount of wine was lost through the negligence of plaintiff. On the contrary, the evidence shows that under normal conditions there is a certain amount of loss in making wine by reason of souring, leakage, evaporation, etc. The best evidence that defendant himself did not consider that the loss of this amount of wine was due to the negligence of the plaintiff is shown from the fact that, in making up the statement on March 30, 1935, wherein defendant charged plaintiff with one-half of the loss of wine from his negligence, defendant only charged plaintiff with the loss of 182 gallons of wine for the entire period from November, 1934, to March 30, 1935. When it is considered that plaintiff made over 17,000 gallons of wine for defendant during the employment, this loss appears insignificant.

Defendant admits the loss of some 5,000 gallons himself in his effort to make a less amount of wine than was made by plaintiff during the six months' employment. Making wine is a rather uncertain. and hazardous business.

Another significant fact is that, while most of the alleged acts of. negligence on the part of plaintiff took place several months before his discharge, it was not until after plaintiff was discharged that defendant took most of them to be so serious. Notwithstanding the fact that by the supplemental agreement of December 10, 1934, defendant had the right to charge plaintiff with one-half the loss of wine caused through plaintiff's negligence, yet defendant made no attempt to make any deductions from the previous monthly settlements on account of such loss, until this last settlement on March 30, 1935, when he undertook to go back as far as the previous November and charge plaintiff with losses for that month, even though the supplemental agreement permitting the charge was not then in effect.

We think that the trial judge correctly held that plaintiff was discharged without sufficient cause, and plaintiff is therefore entitled to recover the salary and commissions that he would have received had he served the full period under the contract. C. C. art. 2749; Sharp v. McBride, 120 La. 143, 45 So. 41; Pringle v. Producers' Turpentine Company, 126 La. 1095, 53 So. 359.

The amount allowed appears to be correct. In fact, there does not seem to be any serious question as to the correctness of the amount allowed.

For the reasons. assigned, the judgment is affirmed at the cost of the appellant.