O’NIELL, Chief Justice.
 

 On the 2d of February, 1911, the board of commissioners of the Fifth Louisiana levee
 
 *376
 
 district entered into a contract with the Concordia Abstract
 
 &
 
 Realty Company, employing the company to make an investigation and discovery of the swamp lands which had escaped assessment by being omitted from the tax rolls, and to recover for the levee district the lands belonging to the district, of which the board had lost trace of its titles. The terms of the contract were embraced in these three paragraphs, viz.:
 

 “That the said levee board shall pay over to the said Concordia Abstract and Realty Co., Ltd., all back taxes which may be collected by the said board on any and all lands in the Parish of Concordia, which may be placed upon the assessment rolls of said parish by the said company, the payment to be made to the said company by the levee board on the certificate of the tax collector of the Parish of Concordia, showing the payment of such taxes.
 

 “It is further agreed that, for all lands which may be recovered for the levee board by the said realty company, whether by suit or otherwise, the levee board is to pay to the said Concordia Abstract and Realty Co., Ltd., a sum equal to one fourth of the value of said lands, and the value of the same is to be ascertained and fixed by the sum for which the said lands may be sold, there being excepted any lands which may be situated on islands in the Mississippi River. All the expenses attending the recovery of these lands, of whatsoever nature, even though they may be incurred in the name of the said board, are to be borne by trie said Concordia Abstract and Realty Company, Ltd.
 

 “The control of all litigation which may arise in the recovery of these lands is to remain with the Board of Commissioners of the Fifth Louisiana Levee District, and they are to have the right to make such settlements as they may deem best, of any suit or suits which may be brought under this contract.”
 

 The Legislature, by the act creating the levee district, Act No. 44 of 18S6 (amended by Act No. 191 of 1908), gave to the levee district all state lands in the parishes of Concordia, Tensas, Madison, and East Carroll. The abstract company had prepared an abstract of the titles of the swamp and timber lands in Concordia parish before the contract was entered into with the board of commissioners; and, soon after the contract was made, the company began abstracting the titles in Tensas parish, and completed the abstract at considerable expense. The board of commissioners theretofore had very little knowledge of its titles in Tensas parish; but the abstract showed that the levee district owned lands of considerable value, including-the lands involved in this suit, in Tensas parish. The abstract company made verbal reports to the board, from time to time, and, on the 31st of October, 1914, made a written report to the board showing the titles to the lands belonging to the levee district in Tensas parish.
 

 All of the rights of the abstract company in the contract dated the 2d of February, 1911, were assigned by the company to Gilbert P. Bullis, who was the title abstractor for the company, and is now an attorney at law, and is one of the two defendants in this suit.
 

 At. a regular meeting of the board of commissioners of the levee district, on the 10th
 
 *378
 
 of June, 1925, the following resolution was adopted unanimously, viz.:
 

 “"Whereas, on February 2nd, 1911, this board entered into a contract with Concordia Abstract & Realty Company, Ltd., in which it was agreed that said company should locate and establish the title of this board to lands Jn Concordia and Tensas Parishes, La., and that said company should receive as compensation for its services an undivided one fourth interest in all lands so located, and said Concordia Abstract and Realty Company, Ltd., has assigned said contract to Gilbert P. Bullis.
 

 “And, whereas, under said contract, the following lands have been located and the title of said board thereto established by said company and said Bullis, to-wit: [Here follows a description of several tracts of land in Concordia Parish, and a description of several tracts in Tensas Parish],
 

 “Now, therefore, be it resolved that the president of this board, Frank H. Schneider, is hereby authorized and instructed to execute, for and in behalf of the board, an act of conveyance, to be by quitclaim only, without warranty of title; said president is hereby authorized to execute said act in the form customary for Louisiana conveyances, and to deliver said act to said Bullis.”
 

 On the 10th'of June, 1925, the president of the board made a notarial act of sale to Bullis, of the undivided fourth interest in the lands in the parishes of Concordia and Tensas, as described in the resolution adopted by the board. The price or consideration of the transfer was recited in the deed thus:
 

 “The price and consideration of this sale is as follows: On February 2nd, 1911, said Board of Commissioners for the Fifth Louisiana Levee District entered into a contract with Concordia Abstract and Realty Co., Ltd., whereby said company agreed to locate and establish the title of said levee board to such lands as it owned in Concordia and Tensas Parishes, La., and, in .consideration of said services, said levee board agreed to pay to said company an undivided one fourth of the lands so located. The above described lands were located and the titles thereto established in accordance with the said contract, and Gilbert P. Bullis is the assignee of all of the rights of said Concordia Abstract & Realty Company, Ltd., under said contract. This sale is therefore made in consideration of the services rendered under said contract in conformity to said contract.”
 

 In February, 1932, the board of commissioners brought this suit against the abstract and realty company and Bullis, to annul the resolution of the board and the sale made to Bullis on the 10th of June, 1925, in so far as the resolution and deed referred to the lands sued for, in Tensas parish, and to recover from Bullis the fourth interest in the lands in that parish. The plaintiff contends that the second paragraph of the contract, employing the abstract and realty company to recover lands for the board, had reference only to lands in Concordia parish; that the abstract company and Bullis did not — nor did either of them — recover for the board any lands in Tensas parish; and that the resolution of the board, and the deed to Bullis, dated the 10th of June, 1925, in so far as they purported to convey to Bullis a fourth interest in lands in Tensas parish, were induced
 
 *380
 
 by error on the part of the board, and by misrepresentation on the part of Bullis, and were therefore null. The plaintiff contends, also, that the sale to Bullis of the fourth interest in the lands in Tensas parish was null, for the further reason that it was a private sale, and therefore violative of the provisions of section 11 of Act No. 44 of 1SS6, as amended by Act No. 191 of 1908, p. 286, and violative also of Act No. 215 of 1908, as amended by Act No. 283 of 1914, p. 571, because these statutes forbid the board to sell lands otherwise than at public auction, after thirty days’ publication.
 

 The defendants filed pleas of no cause or right of action, and estoppel; and, reserving the benefit of these pleas, they answered that the second paragraph of the contract dated the 2d of February, 1911, did refer to lands in Tensas parish, as well as to lands in Concordia parish, and averred that the board had consistently interpreted the second paragraph of the contract as applying to lands in Tensas parish, as well as to lands in Concordia parish. The defendants denied that there was any error on the part of the board, or misrepresentation on the part of Bullis, in the adopting of the resolution by the board on the 10th of June, 1925; and the defendants averred that the resolution was in fact a deliberate and correct interpretation of the contract, on the part of the board, with full and complete knowledge of all of the facts. The defendants averred that the ' statutes forbidding the board to seil lands otherwise than at public auction after thirty days’ publication — Act No. 44 of 1886, as amended by Act No. 191 of 1908, and Act No. 215 of 1908, as amended by Act No. 283 of 1914 — did not forbid the board to contract for the payment of a contingent fee for recovering lands for the board, or to allow a fair and reasonable interest in the land for such fee. The defendants prayed that the suit should be dismissed, or, in the alternative, if the sale of the Tensas lands to Bullis should be annulled, that the board should be ordered to pay to Bullis a fourth of the value of the lands, as provided in the contract.
 

 The district judge decided in favor of the plaintiff on every issue in the case, and gave, judgment declaring the plaintiff to be the owner of the lands sued for. The defendants have appealed from the decision.
 

 The contention of the board of commissioners that the second paragraph of the contract dated the 2d of February, 1911, had reference only to lands in Concordia parish is based upon the fact that the first paragraph of the contract referred only to lands in Concordia parish. By the first paragraph of the contract the abstract company was employed to search for omissions from the tax rolls, of lands which did not belong to the levee district, and which, therefore, should be assessed for taxes. The board’s interest in those lands was merely to collect taxes on them for the levee district. By the second paragraph of the contract, the abstract company was employed to disentangle the titles to' lands belonging to the levee district, and to recover for the district, “by suit or otherwise,”' lands which were held or claimed adversely. Of course, if the restriction in the first paragraph of the contract — “all lands in the Parish of Concordia” — was intended to be read in connection with the second paragraph, this paragraph also referred only to lands in the parish of Concordia. But the
 
 *382
 
 fact is that no such restriction was expressed in the second paragraph of the contract. In that respect the second paragraph of the contract might be deemed ambiguous, depending for its meaning upon whether its extent should or should not be controlled by the language of the first paragraph. The most appropriate — and perhaps the best— guide for the interpretation of an ambiguous contract is found in article 1956 of the Civil Code, viz.: “When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both [of the parties], or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” Both parties to this contract expressed, unequivocally and repeatedly, their understanding that the second paragraph of the contract had reference to lands in Tensas parish, as well as to lands in Concordia parish. The extent to which the board carried out the contract, by unanimously authorizing the president to transfer to Bullís a fourth interest in the lands in both parishes, leaves no doubt that the board construed the second paragraph of the contract as having reference to lands in Tensas parish, as well as to lands in Concordia parish. To say that the hoard was in error in so construing the contract is to argue in a circle, because the contract was susceptible of the meaning which the parties gave to it, and its true meaning depended upon — and was in fact — that which the parties had in mind.
 

 The evidence in the case does not sustain the allegation that Mr. Bullís misrepresented the terms of the contract or unfairly induced the board to so word the resolution which was adopted on the 10th of June, 1925, as to refer to lands in Tensas parish, instead of referring only to lands in Concordia parish. In fact, the evidence shows that Mr. Bullís was not guilty of any unethical or improper conduct, either of commission or of omission. The board of commissioners had the contract before them — or had easy access to it — when the resolution was offered at the regular meeting of the board. The resolution was offered by a disinterested member of the board, was seconded by another disinterested member, and was adopted unanimously, according to the minutes of the meeting, signed by the secretary, and in this record. The board had been informed by Mr. Bullís, from time to time, for several years, that he was spending his time and his company’s money, recovering and untangling land titles for the board in Tensas parish, and the board had received a written report of his work on the 31st of October, 1914, and had made no denial of its being within the scope of his employment to do the work in Tensas parish.
 

 The evidence shows that the abstract company did perform the services for which a fourth interest in the Tensas lands was transferred to Mr. Bullis. There are seven tracts of land described in the resolution and in the deed, in Tensas parish, only three of which tracts are claimed by the board in this suit. The titles to these lands were uncovered and brought to light, so to speak, by the abstract company’s making a complete abstract of the titles of all swamp and timber lands in the parish, at much expense. As to one of the three tracts of land — being a whole quarter section — the title stood in the United States, and an individual was in possession of the land, undertaking to perfect a
 
 *384
 
 homestead entry. Mr. Bullis, for the abstract company, made calls upon the United States Land Office, and, after considerable difficulty, obtained a confirmation of the land to the state, and a patent from the United States to the state, and a certificate of transfer from the state to the levee board. In another instance, considerable time and money was spent by the abstract company in an-tin-successful effort to defeat a homestead entry in Tensas parish. All of this work on the part of the abstract company, in Tensas parish, was done in pursuance of the contract dated the 2d of February, 1911, and with the knowledge and approval of the board of commissioners of the levee district.
 

 In this connection, it is said in the brief for the board of commissioners that the contract dated the 2d of February, 1911, was null, ab initio, because the abstract company was not obliged by the contract to do anything, and hence the obligation of the contract was dependent upon a potestative condition. Perhaps the contract was, originally, an unilateral contract, as defined in article 1765 of the Civil Code; but that is a matter of no importance, since the contract has been fulfilled. An obligation which has been made subject to a potestative condition becomes a valid and enforceable obligation w11©11 tlie condition on which it originally depended has been fulfilled.
 

 Our conclusion is that the judgment appealed from is wrong in so far as it decrees that the contract dated the 2d of February, 1911, was not applicable to lands in Tensas parish. It is wrong also in declaring that the resolution of the board of commissioners and the deed to Bullis, dated the 10th of June, 1911, was made in error of fact on the part of the board of commissioners.
 

 The judgment appealed from is correct in maintaining that the sale to Bullis was made in contravention of the laws forbidding the board of commissioners to sell lands by private sale. By the eleventh section of the act creating this levee district, Act No. 44 of 1886, p. 61, the board of commissioners was authorized to sell lands “either at public or private sale.” But this section of the statute was amended by Act No. 191 of 1908, p. 286, so as to require that “they [the board of commissioners] shall sell said lands at public sale after thirty days advertisement in some newspaper published in the parish where such land is located, to the last and highest bidder.” A similar restriction, together with other restrictions as to minimum prices, was imposed upon all levee boards throughout the state by Act No. 215 of 1908, p. 319, which act was amended in some respects by Act No. 283 of 1914, p. 571, which retains the requirement of public sales to the last and highest bidder. It is not contended that these statutes prohibit a levee board to contract for the payment of a contingent fee, in money, for legal services to be rendered in recovering land titles for the board. The contract dated the 2d of February, 1911, was valid in that respect, because it provided merely for the payment to the abstract company of a sum of money equal to one-fourth of the price at which the levee board might sell the lands. It is not necessary to decide whether the contract would have been valid if it had provided that the abstract company was to receive a title
 
 for
 
 one-fourth of the lands. It is sufficient to say that the con
 
 *386
 
 tract did not provide that the abstract company should receive a title for a part of the lands, but provided merely that the abstract company should receive in money one-fourth of the price at which the levee board might sell the lands. And it was in satisfaction and payment of that obligation that the board of commissioners undertook to sell to Bullis a fourth interest in the lands, at private sale. It is argued by Mr. Bullis that it makes no difference whether he owns a fourth interest in the lands or has the right to' receive a fourth of whatever price the levee board may eventually receive for a sale of the lands; but we believe that in some instances it might make a’ great difference. For example, an individual owning lands jointly with the board of commissioners of a levee district' might undertake to provoke a division of the land, or might hinder negotiations on the part of the board of commissioners for a public sale of the land. It is sufficient to say that, as a levee board is forbidden to sell any of the levee district’s land at private sale, by the ■same token a levee board is forbidden to sell an undivided interest in any such land at private sale. It was not necessary — or of any advantage to the levee district — for the board of commissioners to make the sale in this instance. The contract dated the 2d of February, 1911, was fulfilled; and the board of commissioners was under no other obligation to Mr. Bullis than the obligation to pay him one-fourth of whatever the board might sell the land for, eventually, at public sale, according to the provisions of the laws regulating the sales of levee district lands. Mr. Bullis had also the right, which in fact any individual has, to demand a public sale of the land, by complying with the provisions of Act No. 215 of 1908, as amended by Act No.- 283 of 1914.
 

 The judgment appealed from should have reserved to Mr. Bullis his right to receive a fourth of the price at which the levee board may eventually sell these lands at public sale.
 

 Decree.
 

 The judgment appealed from is affirmed in so far as it declares that the board of commissioners for the Fifth Louisiana levee district is the owner of the lands sued for, described as N.W.% of S.E.% of Sec. 1, Tp. 12 N., R. 9 E., containing 40 acres, and W.% of S.E.% of Sec. 10, Tp. 13 N., R. 10 E., containing 79.77 acres, and S.E.% of Sec. 34, Tp. II N., R. 9 E., containing 160.18 acres; and the judgment is affirmed in so far as it declares the resolution and the deed dated the 10th of June, 1925, by which the board of commissioners undertook to sell these lands to Gilbert P. Bullis, to be null because of its being an attempted private sale, in contravention of the law requiring a public sale of such lands. In all other respects the judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the defendant, Gilbert P. Bullis, shall have one-fourth of the price for which the plaintiff, board of commissioners, shall eventually sell these lands, at public sale, according to law. The claim of Bullis for reimbursement for taxes and timber estimates on these lands is dismissed as of nonsuit. The defendants are to pay the costs incurred in the district court, and the plaintiff the costs of appeal.