# NORBERT M. WERTIN v. ALFRED G. WERTIN AND OTHERS.[1]

March 24, 1944.

No. 33,692.

[1]Reported in 13 N. W. (2d) 749.

52

*Ahles & Ahles,* for appellant.
*Quigley, Donohue & Quigley,* for respondents.

JULIUS J. OLSON, JUSTICE.

This is an appeal by Norbert M. Wertin from an order appointing a cotrustee to act as such with him in the performance of trust duties of an express trust created by the will of John Wertin, who died testate September 19, 1940, a resident of Stearns county. His will was admitted to probate on October 18 by the probate court of that county. Under its terms, testator appointed appellant and one Roman Jesh to be executors of the will and testamentary trustees of the trust created thereby.

Mr. Jesh failed to qualify as executor. Norbert, however, promptly qualified, and to him alone letters testamentary were issued on December 30, 1940. No reason appears in the record, nor has any been suggested by anyone, why Mr. Jesh failed to qualify. However that may be, the fact remains that on May 19, 1943, Norbert filed in the district court of Stearns county his petition asking for his appointment as sole testamentary trustee of decedent's property, now ready for final transfer from the jurisdiction of the probate to that of the district court. He there alleged, and there is no question about the accuracy of his averments, that he "has fully administered the said estate"; that after deducting all expenses and disbursements in connection with the proceedings there had he now has in hand for final disposal to the testamentary trustees "the approximate sum of $38,629.59; that in addition to said sum

there is real estate in said estate of the approximate value of $53,-830; that under the terms of said last will and testament * * * all of the income from both the personal property and real estate in said proposed trust will go to and belong to his widow, Mary Wertin, during the term of her lifetime"; that the annual income from the aforesaid property "will be approximately $7,500"; that he "will shortly be prepared to turn over to the named testamentary trustees all of the aforesaid assets in his possession"; and that he "and Roman Jesh are proper persons to be appointed as such trustees."

The court ordered a hearing on his petition, to take place June 5, and directed that all interested persons be served with notice. The persons entitled to, and who received, notice were the widow, decedent's three sons, and his daughter Justina Brennan. Apparently the daughter Mathilda survived decedent but died before the petition was filed, since we find that the son Alfred G. Wertin was appointed administrator of her estate, and upon him a like notice was required to be served and was so served. Roman Jesh was also included in the order and was similarly served.

At the time set for the hearing, counsel for the parties who appeared agreed to have the hearing adjourned to August 17, and it was so adjourned. All parties appeared in person or by counsel except Mr. Jesh and the son Jerome. The record does not include any of the testimony taken at the hearing, and we have only the recital of facts given in the court's order. In substance, these are that counsel for Norbert "orally requested" his appointment; that the objectors "then orally consented" thereto but "called the court's attention to the fact that a vacancy existed" as to Mr. Jesh and that they sought the "appointment of a second trustee" to take his place. They suggested Mary Herman Wertin as such substitute, but Norbert objected to her appointment because she had not been designated to be such by testator. What relationship she bears to the Wertin family is not disclosed. However, the court appointed her a cotrustee to act with Norbert in administering the trust. His contention is that, since she was not nominated by testator to be

such trustee, therefore the court was "without jurisdiction" so to appoint her. Upon that issue alone we are now to determine whether the court was in error.

■ "Express trusts are those which are created by the direct and positive acts of the parties, by some writing, or deed, or will; or by words either expressly or impliedly evincing an intention to create a trust." 65 C. J., Trusts [§ 10]B. In our cases we have defined such trust to be "one created by the parties in language directly and expressly pointing out the persons, property, and purposes of the trust." 6 Dunnell, Dig. & Supp. § 9877, and cases in note 95; In re Estate of Burton, 206 Minn. 516, 289 N. W. 66. Obviously, what we have here is an express trust, one created by the testator for the benefit of those who were the natural objects of his bounty, *i. e.*, his wife and children. Therefore, we may safely assume that the persons chosen by him to be trustees of this very substantial estate were deliberately selected, because in their integrity and soundness of judgment he reposed confidence.

■ It has long been the established rule, in fact "from the earliest period of equitable jurisprudence," that courts of equity are empowered to exercise their equitable authority for the purpose of protecting beneficiaries against inefficiency, incompetency, neglect, or fraud on the part of those who have been named trustees. Because the beneficiaries of a trust are often incapable "by reason of age, inexperience, or other incapacity, [of] * * * looking out for themselves," it has become a recognized rule that such a court "stands in the attitude of guardian of their interests." 26 R. C. L., Trusts, § 4, and cases in notes 4 and 5.

■ When our legislature enacted L. 1933, c. 259, it clearly intended the law to be, as its title confirms, "An act relating to *procedure* in connection with the administration of trusts." (Italics supplied.) The present proceedings were brought under § 1 thereof (Minn. St. 1941, § 501.33 [Mason St. 1940 Supp. § 8100-11]), which provides:

"Upon petition of any person appointed as trustee of an express trust by any will * * * *the district court * * * shall consider the application to confirm the appointment* of the trustee and specify

the manner in which he shall qualify. Thereafter such district court shall have jurisdiction of such trust as a proceeding in rem." (Italics supplied.)

The other sections of the act are not of consequence here except § 6 (*Id.* § 501.38 [§ 8100-16]), which provides that "nothing in this Act contained shall be deemed to limit or abridge the power or jurisdiction of the district court over trusts and trustees."

The meaning of the words we have italicized is the crux of the present controversy. It has also given us considerable concern. Appellant's contention is that the legislature intended that the "district court would not have jurisdiction to appoint any trustee except those mentioned in the will in the absence of a showing that both trustees named in the will refused to accept or were disqualified or incompetent or had died. The fact that one of the trustees named did not ask for his appointment or might possibly not accept the appointment, did not create a vacancy. In such a situation, the trial court could only appoint the remaining trustee."

We think appellant's contentions are not well founded. He overlooks the fact that the law deals with *procedure*, not *jurisdiction*. He impliedly admits that if both of the named trustees were for any reason disqualified such action as the trial court has taken might well be sustained. There can be no serious doubt that such authority exists as was here exercised by the court. Thus we find that under *Id.* § 501.44 (Mason St. 1927, § 8106), the court is given "full power to appoint a new trustee in place of one deceased, resigned, or removed"; and when such vacancy occurs for any of the stated reasons, "or other cause," so that "there is no acting trustee, the court, in its discretion, may appoint a trustee, or cause the trust to be executed by one of its officers under its direction." Likewise, under *Id.* § 501.41 (§ 8103), if the surviving trustee dies, "the trust estate shall not descend to his heirs, nor pass to his personal representatives," but, insofar as the trust estate is then "unexecuted," it "shall vest in the district court with all the powers and duties of the original trustees, and shall be

executed by some person appointed for that purpose, under the direction of the court."

■ The trial court has determined that as to Mr. Jesh's trusteeship there is a vacancy; and Mr. Jesh, admittedly, has done nothing to indicate that he is at all interested or has the slightest notion of claiming a right to this important office. As a matter of fact, he has made no appearance for any purpose. His coexecutor proceeded alone in the discharge of the executors' duties. Without his aid, appellant has finished, or is about to finish, that job. The probate court, where the proceeding is pending, is holding in abeyance the issuance of a final decree awaiting the outcome of this litigation. Appellant asked for his appointment as sole testamentary trustee. Mr. Jesh, while duly served with notice of the obviously important hearing on the matter of appointment of trustees, was conspicuously absent. He has not sought a review in the court below or here of the order made.

All interested parties have appeared, except Mr. Jesh and the son Jerome. The latter's absence may well be accounted for by the provisions made for him by his father's will, since thereby the same trustees as those who are designated to take charge of the principal estate for the benefit of the wife act in a similar capacity for Jerome in respect to the portion of the estate going to him after the mother's death. Thus we have a situation where all parties in interest, except appellant alone, deem it advisable and desirable that there should be an additional trustee to act with appellant. The trial court has found such trustee necessary and that the one so appointed is a proper person so to act. Appellant does not question her fitness or capacity, nor does he object to her for personal reasons. His only claim is that, since testator did not appoint her, therefore he, as the remaining trustee, becomes invested with decedent's entire estate, and that no one, so long as he is competent and willing to act, can be authorized to act with him.

We may readily agree with the proposition that with the creator of the trust initially rested the authority to designate those who should execute it. And we may go another step and concede that

appellant is qualified effectively to carry out the trustees' duties. But, even so conceding, that does not solve our problem as to the power of the district court to fill a vacancy occurring in the office of a named trustee who has failed to act or even to qualify. 26 R. C. L., Trusts, § 28.

We are required ever to bear in mind that the trust estate is one thing, and the personnel required to carry out the general purposes of the trust quite another.

Unquestionably the district court acquired jurisdiction *in personam* of the persons named to be trustees and of the trust beneficiaries. Appellant himself invoked such jurisdiction, and all others having an interest in the trust, as beneficiaries or otherwise, have been duly served with notice and made parties to these proceedings. All of them are equally bound by that court's determination of the issues properly before it. Bearing in mind that a trust, such as we have here, implies two estates or interests, one legal, the other equitable, and that the trustees hold the legal title, not as absolute owners, but as trustees for the benefit of the beneficiaries, who are the real owners of the beneficial or equitable interests, it is clear that to carry out and to bring to fruition the trust purpose the court having jurisdiction of the case is the final authority for determining, as need arises, whether the personnel of the trusteeship should be changed. Our cases uniformly hold that the "fundamental essential to the existence of any trust" is the "separation of the legal estate from the beneficial enjoyment," and that "there is no trust where both [interests] are in the same person." Julian v. N. W. Trust Co. 192 Minn. 136, 139, 255 N. W. 622, 624.

Testator, unfortunately, made no provision in his will for the appointment of successors in event of vacancies, incapacity, or refusal to act on the part of one or both of the appointees. If neither had qualified, it is obvious that the trust would not thereby be defeated. In such event the district court would, as we have seen, proceed to administer the trust. Furthermore, "If the trust deed contains no provision for the appointment of successors to outgoing trustees, the court of chancery in its ordinary jurisdiction over the

subject of trusts will exercise the power of appointment." Stahl v. Mitchell, 41 Minn. 325, 334, 43 N. W. 385, 388. As stated in 65 C. J., Trusts [§ 378] (3):

"The power of courts of equity and their equivalent to appoint trustees exists and will be exercised whenever there is a failure of suitable trustees to perform the trust either from original or supervenient incapacity to act, as where the creator of the trust designated as trustee one incapable of acting; as where the trustee designated was incompetent, or disqualified to act under the particular circumstances; or where, after beginning his duties, the original trustee became incapable of continuing from any cause; or where the designated trustee before or after qualifying became unsuitable or incapable of acting because of adverse interest, or disability, arising from age, alienage, mental incompetence, or physical infirmity."

We can see no distinction in principle between such a case and the one before us. The court's exercise of such power is inherent, and in its exercise it is not limited to cases in which there is no trustee but it "may, and should, * * * in its discretion * * * exercise such power whenever the circumstances of each particular case seem to require its intervention." Thus, in New York we find that when its constitution of 1846 was adopted the court of chancery theretofore established and functioning was abolished. Its jurisdiction was conferred thereby on the supreme court (a court similar in its general jurisdiction to our district courts). That court, as held by many decisions rendered in that state, "has inherent equitable jurisdiction to appoint trustees, and statutory provisions regulating appointment of trustees" by that court "neither add to, nor detract from, the constitutional power of the supreme court." 65 C. J., Trusts [§ 372]6 and [§ 373]b.

"The powers of courts of chancery and their statutory equivalents to appoint trustees are very broad. In the absence of contrary statute, the question as to whether a trustee should or should not be appointed is addressed to the sound discretion of the court,

although its power of appointment must not be exercised arbitrarily. In determining whether or not to appoint a new trustee the courts will consider all the circumstances bearing on the matter, including the wishes of the beneficiaries." 65 C. J., Trusts [§ 376]d. Applying that rule, which we think a sound one, to the facts here appearing, it seems clear that the district court had jurisdiction, not only of the individuals concerned but likewise of the trust estate itself, as and when the trustees appointed by it have qualified. "Thereafter such district court," so § 501.33 (Mason St. 1940 Supp. § 8100-11) provides, "shall have jurisdiction of such trust as a proceeding in rem."

Order affirmed.

[1]Reported in 13 N. W. (2d) 737.