80 So.2d 95

EMERY & KAUFMAN, Ltd.,

v.

Add A. HEYL et al.

No. 41390.

Nov. 8, 1954.

On Rehearing March 21, 1955.

Dissenting Opinion March 23, 1955.

Rehearing Denied April 25, 1955.

 

Claude F. Kammer, New Orleans, for defendants-appellants.

Deutsch, Kerrigan & Stiles, Robert E. Leake, Jr., New Orleans, for appellee.

MOISE, Justice.

The gravamen of this appeal presents the issue of the dischargeability or non-dischargeability of a debt in bankruptcy. The judge of the district court held that the debt, under the circumstances of record, was non-dischargeable in bankruptcy, and because of that decision this appeal is prosecuted.

The facts are as follows:

The General Agency of Emery & Kaufman, Ltd., party of the first part, and Add A. Heyl, party of the second part, the Local Agent, made an agreement relative to an Agency Contract, the first lines of that agreement reading:

*"In consideration of the General Agent's making its underwriting facilities available to the Local Agent,* and in consideration of the other mutual covenants, stipulations and agreements hereinafter set forth, the parties hereto agree as follows:" (Italics ours.)

An examination of the contract as a whole leads us to believe that the intent of the parties was to make a continuous agency agreement with no fixed terms, but which could be terminated by either party upon notice. However, the agreement was fully enforceable until terminated. The rate of commission to be received, for making available the use of the General Agency's underwriting facilities and other covenants, is fixed in the schedule annexed to the contract. The contract sets forth that the Local Agent is to write insurance protection through the underwriting facilities; that the policies are to be approved by the General Agency; and that the Local Agent is to pay his own expenses in the conduct of his business and is to receive compensation as fixed in the schedule, but he is in duty bound to pay to the General Agency the sums which were held in trust by the Local Agent and which must be paid after the delivery of the contracts of insurance, making the protection sought by the assured complete.

The Local Agent received his compensation, the General Agent performed his part of the agreement, but the Local Agent failed to remit to the General Agency the funds entrusted to his care because he made a conversion of these funds to his own use. Thereupon, the General Agency terminated its contract, had an audit made and there was shown by that audit, as of December 31, 1950, to be due to the General Agency the sum of $9,012.68, after giving to the appellant all credits in conformity to the agreement.

The appellee brought suit for recovery. Mr. Heyl filed a petition in bankruptcy, and in his reason as to the dischargeability of the debt by bankruptcy, the referee stated:

"This is a question for another court of proper jurisdiction. Bankruptcy courts are not required or expected to pass on the question of dischargeability. The bankrupt's discharge, if one is granted herein, will be a discharge of all of his dischargeable debts."

Mr. Heyl received his discharge, and he excepted to the jurisdiction of the Civil District Court on the grounds that subsequent to the filing of the action by appellee he had filed his voluntary petition in bankruptcy and had been adjudicated a bankrupt. On June 2, 1952, after this suit

was tried and judgment rendered (but before judgment was signed), Mr. Heyl·was given his discharge. This is stated by appellee in its brief, and this fact has not been contradicted by appellant.

Appellee, in endeavoring to get payment,· obtained the insurance policy held on the life of appellant. The policy value is not shown. This act did not constitute a condonement of the debt, nor a novation. In fact, such was not even argued, but the appellant is vigorously contending that—

"1. This agreement is unenforceable because it contains a potestative condition;

"2. The indebtedness is one which is dischargeable in bankruptcy;

"3. The appellee's claim has prescribed."

We must take into consideration the completed transactions shown in the record, which should be viewed in the light of consequences, and then apply the law.

In the suit of Board of Com'rs for Fifth Louisiana Levee Dist. v. Concordia Abstract & Realty Co., 181 La. 373, 159 So. 588, 592, 12 La.Law Review 103, we held:

"An obligation which has been made subject to a potestative condition becomes a valid and enforceable obligation when the condition on which it originally depended has been fulfilled." .

This suit was viewed in the light of consequences of the completed transaction, before applying the law.

The record discloses that the transactions were fully completed as to the benefits of appellant—he having received full compensation for his work. It was appellant's conversion of entrusted funds that compelled the appellee to file suit for recovery. Appellee's underwriting facilities were furnished; it did not arbitrarily refuse policies tendered by appellant for approval. There is no potestative condition apparent, because during the life of the agreement the execution of the agreement was not dependent on the act of either party, because the transactions were completed. A potestative condition is "that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder." Art. 2024, LSA–C.C.

The defendant argues that the contract is invalid because of the provisions of Articles 2034 and 2024 of the LSA–Civil Code. We think that this contention is erroneous, because the contract states a serious consideration, in that the General Agency agreed to make and did make its underwriting facilities available to the defendant. And, this consideration was real, actual, and did not depend on whim or caprice.

In the case of Cali v. National Linen Service Corporation, 5 Cir., 38 F.2d 35, 36, it is stated:

"In the construction of articles 2024, 2034, and 2035 of the [LSA–] Civil Code, the Supreme Court has clearly announced the rule that, if the potesta-

tive agreement is supported by a serious consideration, the contract is not void. For example, an agreement by a lessee to drill an oil well, which may be postponed indefinitely by the payment of $4 quarterly, with the option in the lessee to abandon the lease on the payment of $2, is held to be potestative as not based on a serious consideration, while practically the same agreement, but based on a consideration of $100, was held to be not potestative and valid. Murray v. Barnhart, 117 La. 1023, 42 So. 489, and authorities therein cited; Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 So. 754; Girault v. Feucht, 117 La. 276, 41 So. 572."

.See also, Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182; and Martin-Parry Corp. v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83.

The second objection raised by the defendant is the one relating to the discharge of this debt in bankruptcy. The Bankruptcy Act, 11 U.S.C.A. § 35, states:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; * * *."

In the suit of Vertman v. Drayton, 223 Iowa 380, 272 N.W. 438, 439, it was held:

"A person is said to receive money in a fiduciary capacity when the money is not his own or for his benefit, but is for the benefit of another person to whom he stands in a relation implying great confidence and trust on the one part and a high degree of good faith on the other."

The very nature of the relationship is self-imposed by the contract itself in Paragraph One, and it would seem that the facts of the case are comprehensive and complete in their meaning by the law.

The case of American Surety Co. of New York v. Greenwald, 223 Minn. 37, 25 N.W. 2d 681, was a case where the facts are almost identical. There it was held as shown by the syllabus from which we quote:

"*Where by arrangement entered into between defendant and an insurance company it was expressly provided that defendant was to collect certain premiums for the company and, after deducting his commissions, that he was to remit the balance to the company, held that an express trust was created; that defendant was acting in a fiduciary capacity thereunder within the meaning of § 17, sub. a (4) of the Bankruptcy Act, 11 U.S.C.A., § 35, sub. a (4); and that the debt created by defendant's wrongful failure to remit to the com-*

*pany the moneys thus collected was rendered nondischargeable in bankruptcy."* (Italics ours.)

See also Morgan v. American Fidelity Fire Insurance Co., 8 Cir., 1954, 210 F.2d 53.

The language of the Bankruptcy Statute on dischargeability, 11 U.S.C.A. § 35, sub. a (4), reads in substance:

Whether the defendant's failure to turn in his collections constitutes a fraud, embezzlement, mis-appropriation or defalcation.

We must consider this language.

In the case of Central Hanover Bank & Trust Co. v. Herbst, 2 Cir., 93 F.2d 510, 511, 114 A.L.R. 769, it is stated:

"Colloquially perhaps the word, 'defalcation,' ordinarily implies some moral dereliction, but in this context it may have *included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts."* (Italics ours.)

In the case of Citizens Mutual Automobile Insurance Co. v. Gardner, 315 Mich. 689, 24 N.W.2d 410, 414, the Court held that where an insurance agent had received premiums and failed to remit to the insurer, such action constituted a defalcation in fiduciary capacity and was not dischargeable in bankruptcy. The Court stated:

"Under the construction of the pertinent provision of the bankruptcy act indicated in the foregoing cases and

others of like import, the conclusion follows that defendant's discharge in bankruptcy *was not a bar to enforcement of plaintiff's judgment against him.* Defendant, as plaintiff's agent was acting in a fiduciary capacity, received the premiums in such capacity, and admittedly failed to make payment thereof to plaintiff as it was his duty to do. Based on the record before us such failure must be regarded as *constituting a 'defalcation' within the meaning of the bankruptcy act."* (Italics ours.)

In the case of Indemnity Insurance Co. of North America v. Leibrock, Sup., 55 N.Y.S.2d 3, 4, 163 A.L.R. 1010, the Court made the following statement:

"The definitions of the word 'defalcation' as included in the decided cases, are far from satisfactory, when applied to the facts established on this motion. The court is mindful of the fact that the word 'defalcation' must be given a meaning different from fraud, embezzlement or misappropriation, and that the word does not necessarily imply dishonesty or fraud. City of Syracuse v. Roscoe, 66 Misc. 317, 123 N.Y. S. 403; Indemnity Insurance Co. of North America v. Covington, 172 Misc. 310, 14 N.Y.S.2d 683. The court is also mindful of the fact that it was evidently not the intention of Congress, in enacting the Bankruptcy Act, to exclude all debts incurred by fidu-

ciaries from release by a discharge in bankruptcy. If the Congress had so intended, there would have been no necessity for the limitation of the debts so excluded, by the classification of such debts as those created by fraud, embezzlement, misappropriation or defalcation. Defalcation is commonly defined as 'an abstraction, or misappropriation of money by one, especially an officer or agent, having it in trust'. Webster's New International Dictionary, 2d Ed. 'The failure of one who has received money in trust or in a fiduciary capacity to account and pay over as he ought', 18 C.J. 454, 26 C.J. S., Defalcation, p. 663; 'The failure of a public officer to account for monies received by him in his official capacity.' National Surety Co. v. Lanza, Sup., 42 N.Y.S.2d 370, 371. The word, as ordinarily understood, implies some bad faith or misconduct, as distinguished from mere negligence or mistake. Central Hanover Bank & Trust Co. v. Herbst, 2 Cir., 93 F.2d 510, 114 A.L.R. 769; In re Bernard, 2 Cir., 87 F.2d 705. No judicial decision has been called to the Court's attention, in which the word has been construed as including a negligent failure to collect money, but on the contrary, the reported decisions, in which the word has been construed, concern failures to pay over money collected, due to improper action on the part of the debtor, or on the part of some person or persons for whose actions the debtor was legally accountable. * * *" See, First Citizens Bank & Trust Co. v. Parker, 225 N.C. 480, 35 S.E.2d 489, 163 A.L.R. 1003, 1008.

Counsel for the defendant relies on the case of Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931. This case is distinguishable because there the money held by the defendant constituted a loan, and under the circumstances he was only under the obligation to pay plaintiff and her heirs up to the extent of their interest. In other words, no fiduciary relationship existed.

The appellant files a plea of prescription. If appellee's suit were for damages resulting from offenses or quasi offenses, appellant's plea of prescription might be proper. Appellee's claim, however, is not ex delicto in any sense, but is founded on contract, and a prescription of ten years applies.

Our conclusion is that the district court correctly found for appellee—that the debt is non-dischargeable in bankruptcy; otherwise, the bankrupt would profit by his own wrong. Crawford v. Burke, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147.

For the reasons assigned, the judgment of the trial court is affirmed.

HAMITER, J., dissents with written reasons.

LE BLANC, J., absent.

HAMITER, Justice (dissenting).

The important question to be determined in this cause is whether the discharge in bankruptcy of appellants (the defendants conducting a local insurance agency) effected a release of their indebtedness with appellee (plaintiff corporation carrying on a general insurance agency) which was in the amount of $9,012.68 and arose out of business operations between the two pursuant to a written agency contract.

According to the Federal Bankruptcy Statute, 11 U.S.C.A. § 35, sub. a, "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; * * *."

The phrase "in any fiduciary capacity", as contained in the exception to the general rule, has consistently been limited in its application to technical trusts and trusts which have been actually and expressly constituted by the parties. Ordinarily it does not apply to acts of agents, commission men, bailees, brokers, factors, partners, and other persons similarly situated; nor does it relate to trusts which are merely implied by law from contracts. Upshur v. Briscoe, 37 La.Ann. 138, also Id., 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931; Hennequin v. Clews, 111 U.S. 676, 4 S.Ct. 576, 28 L. Ed. 565; Nobel v. Hammond, 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621; Davis v. Ætna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393; Collier on Bankruptcy, Volume 1, Section 3589, pages 851 and 854.

Appellee herein contends that the mentioned contract created a "technical trust", as a result of which appellants operated in a fiduciary capacity; and, hence, that the indebtedness was not released by the discharge in bankruptcy. Appellants, on the other hand, insist that their relationship with appellees was solely that of agent and principal or debtor and creditor.

I am convinced that in the conduct of their local insurance agency the appellants did not act in any fiduciary capacity toward plaintiff, within the meaning of the bankruptcy statute, so as to prevent a release of their indebtedness by the discharge. The written contract which governed all of their operations made no mention whatever of the existence of a trust relationship. Rather, as its provisions disclose, it contemplated appellants' carrying on a separate and distinct undertaking in the nature of a local insurance agency, with considerable discretion being vested in them, subject of course to proper and timely accounting to and certain supervision by appellee.

In the contract, for example, authority was granted appellants "* * * to issue and deliver policies, bonds, certificates, endorsements and binders which the General Agent may, *from time to time,* authorize to be issued and delivered; to cancel such policies and bonds in the discretion of

the Local Agent, where cancellation is legally possible; to collect, receive and receipt for premiums on insurance tendered by the Local Agent to, and accepted by, the General Agent; and to retain out of premiums so collected, as full compensation on business so placed through the General Agent, commissions at the rates set out in said Schedule 'A'; * * *." (Italics mine.)

Further, the contract stated that "In the event of the termination of this agreement, the Local Agent's records and the use and control of his expirations shall be and remain the property of the Local Agent, and be left in his undisputed possession, provided he has promptly accounted for and paid over all premiums for which he may be *liable;* * * *." And, "The General Agent shall not be responsible for Local Agency expenses such as rentals, transportation facilities, clerk hire, solicitors' fees, postage, advertising, exchange, personal local license fees, adjustments by the Local Agent of losses under policies issued by the Local Agent, or any other Local Agency expenses whatsoever." (Italics mine.)

To be noted also are these provisions of the contract: "Monthly accounts will be prepared by General Agent and forwarded to Agent shortly after close of month. * * * Balances are to be paid at the New Orleans office of General Agent not later than sixty (60) days after the close of the month in which the business covered by such account was written. * * *

In conducting your agency, the companies are to enjoy the benefit of your careful judgment and conservatism must govern, so that our relations will prove mutually beneficial and enduring."

The cases relied on by appellee herein for rendering applicable the exception to the general rule, and those cited in the majority opinion in support of its conclusion, do not appear to be appropriate. For the most part they involve either (1) a technical or an express trust or (2) a state statute declaring that premiums received by an insurance agent are held by him in a fiduciary capacity.

As to the latter alternative the following is to be found in Collier on Bankruptcy, Volume 1, in an annotation at page 1648 of the Pocket Supplement: "N. 14 Agent to collect funds.—In line with the case of Guernsey-Newton Co. v. Napier, cited in the Treatise, there is a growing line of authority based on state statutes that premiums received by an insurance agent are received in a fiduciary capacity—contrary to the general rule respecting agents—and that the liability of the agent for a misappropriation, embezzlement or the like is therefore non-dischargeable in bankruptcy. * * *"

Clearly the contract in this cause did not create or provide for any kind of trust. Moreover, there has come to my knowledge no pronouncement of our Legislature to the effect that a local insurance agency, operating as did these appellants, receives and

holds premiums in a fiduciary capacity. Hence, I can conceive of no good reason for this court's departing from the above stated general rule that has been followed consistently by both the federal and state courts.

I respectfully dissent.

### On Application for Rehearing

PONDER, Justice.

We granted a rehearing in this case because we were not convinced that an express or technical trust was involved. On reconsideration of the case, we have arrived at the conclusion that the agreement between the parties did not disclose an express or technical trust and that, therefore, the debt was dischargeable in bankruptcy. No express trust was created in the contract or by statute and the sole question presented is whether or not the defendant acted in a fiduciary capacity.

 It appears that the plaintiff, a general insurance agency, entered into an agreement with the defendant, a local agent, and that the agreement contains no express trust. The pertinent part of the contract is recited in the original and dissenting opinions previously handed down in this case and it is not necessary to repeat them herein. The important part of the agreement is the manner in which the local agent was to remit the balance due on the premiums to the general agent. According to the contract, monthly accounts were to be prepared

by the general agent and forwarded to the local agent and the balance due from the premiums after the local agent had deducted his commission were to be transmitted to the general agent within sixty days after the close of the month. There is no provision in the contract requiring the premiums to be kept in a separate account. Under the contract the funds derived from the premiums could be mingled with the funds belonging to the local agent; all the contract required of the local agent was the remittance of the balance due to the general agent not later than sixty days after the close of the month. Under these circumstances, no fiduciary relationship was established. The phrase, "in any fiduciary capacity", as found in the Federal Bankruptcy Statute, 11 U.S.C.A. § 35, sub. a, has consistently been limited in its application to technical trusts and trusts which have been actually and expressly constituted by the parties. "The term 'fiduciary capacity' relates to technical or express trusts, and not to those trusts which the law implies from a contract or the position of parties to a transaction. See Crawford v. Burke, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147; Noble v. Hammond, 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621; Maxwell v. Evans, 90 Ind. 569 [596], 46 Am.Rep. 234; American Agr. Chemical Co. v. Berry, 110 Me. 528, 87 A. 218, 45 L.R.A.,N.S., 1106, Ann.Cas.1915A, 1293; Woodward v. Towne, 127 Mass. 41, 34 Am.Rep. 337; Bryant v. Kinyon, 127 Mich. 152, 86 N.W. 531, 53 L.R.A. 801.

* * *. The mere reposing of confidence in a person with whom one has a commercial transaction does not create the fiduciary relation intended by the Bankruptcy Act." 6 American Jurisprudence, Verbo Bankruptcy, page 1018, par. 796. Citing Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931, and Goodman v. Herman, 172 Mo. 344, 72 S.W. 546, 60 L.R.A. 885. Further on page 1019 it is stated: ·

"The use of the word 'trust' in an instrument does not make the relation a fiduciary one within the meaning of the exception, where the legal effect of the instrument is not to create a fiduciary relation (citing thereunder Upshur v. Briscoe, supra). Agents, bailees, brokers, factors, commission merchants, purchasers under conditional sale contracts or trust receipts, and the like, although occupying positions which are popularly known as positions of trust, are not in a fiduciary capacity by virtue of an express trust, so that debts created by their acts in such positions will be excepted from a discharge in bankruptcy."

The rule is well stated in the case of Crawford v. Burke, 195 U.S. 176, 189, 25 S.Ct. 9, 11, 49 L.Ed. 147, as follows:

"We may remark here, in passing, that ever since the case of Chapman v. Forsyth, 2 How. 202, 11 L.Ed. 236, this court has held that a commission merchant and factor who sells for oth-

ers is not indebted in a fiduciary capacity within the bankruptcy acts by withholding the money received for property sold by him. This rule was made under the bankruptcy act of 1841, and has since been repeated many times under subsequent acts. Neal v. Clark, 95 U.S. [704] 708, 24 L.Ed. 586; Hennequin v. Clews, 111 U.S. [676] 679, 4 S.Ct. 576, 28 L.Ed. [565] 567; Noble v. Hammond, 129 U.S. [65] 68, 9 S.Ct. 235, 32 L.Ed. [621] 623; Upshur v. Briscoe, 138 U.S. [365] 375, 11 S.Ct. 313, 34 L.Ed. [931] 934,—as well as in cases in the state courts, too numerous for citation."

This rule is equally applicable under the circumstances in the present case.

For the reasons assigned, the judgment of the lower court is reversed and set aside and the plaintiff's suit is dismissed at its cost.

MOISE, J., dissents for reasons set forth in the original opinion, with written reasons.

MOISE, Justice (dissenting).

I respectfully urge the Members of this Honorable Court, who joined in the majority opinion on rehearing, to reopen their minds, re-examine the evidence, take into consideration the interested parties to the agreement, and look to the character of the business itself. They would arrive anew at a decision prompted by full re-examination of the case on all of the facts and ap-

plicable law, and I feel that they would reach a different conclusion. When all of the facts are seen and the respective positions of the parties made manifest, the obscuring fallacies must of necessity fall apart.

The majority opinion on rehearing holds that the defendant was not acting in a fiduciary capacity when he mis-appropriated the funds of his principal, because no technical or express trust relationship existed between the Local Agent and the General Agent. The writer of the opinion relies strongly on the case of Crawford v. Burke, 195 U.S. 176, 49 L.Ed. 147, 25 S.Ct. 9. That case involved a transaction between client and broker, and I do not think it is pertinent to the issues here.

The parties to the transactions in the instant case are the assured, the local agent, the general agent, and the Insurance Company itself. They all have a mutuality of interest. Recognizing such a fact, the State of Louisiana has an insurance code by which the insurance business is regulated under the police powers of the State.

LSA–R.S. 22:2 declares that:

"Insurance is a business affected by the public interest and it is the purpose of this Code to regulate that business in all its phases."

Only the General Agent complied with the law of the State of Louisiana. The Local Agent did not so comply, and to engage in this business of trust he had to obtain the underwriting facilities of the General Agent. The very opening lines of their contract provides:

"*In consideration of the General Agent's making its underwriting facilities available to the Local Agent,* and in consideration of the other mutual covenants, stipulations and agreements hereinafter set forth, the parties hereto agree as follows:" (Italics ours.)

The Local Agent (in conformity with the annexed schedule of the contract) solicited policies of insurance, which had to be approved by the General Agent. He then delivered the policies to the assured and collected the premiums which the policyholders paid for protection. The Local Agent was allowed to retain 10 to 25% of the premiums collected, dependent on the nature and character of the policies. He held the balance of 75 to 90% in trust to be turned over to the General Agent, who in turn remitted to the Home Office the agreed proportion. The payment of premiums is as necessary for an insurance business to be a going concern as gasoline is necessary to run an automobile.

The majority opinion on rehearing cites the case of Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931. In that case, the defendant held funds as a loan. One who borrows money must pay back what he borrows, but the loan funds may be invested and employed at his pleasure.

The factual situation in the instant case is easily distinguished from that set forth

in Upshur, supra. The premiums collected by the Local Agent were not loaned to him by the General Agent, and, therefore, no debtor-creditor relationship existed between them. The collection of the premiums constituted a sacred trust. When one collects money in a fiduciary capacity, as the Local Agent did in this case, he is not permitted to spend the money as he chooses.

In our original opinion we quoted the case of Citizens Mutual Automobile Insurance Co. v. Gardner, 315 Mich. 689, 24 N.W.2d 410, in which the facts were identical to the ones here. The State of Michigan had a statute which provided that an agent was acting in a fiduciary capacity when collecting insurance premiums, but this statute was merely declaratory of that existing relationship.

In the suit of State v. United States Steel Co., 1953, 12 N.J. 51, 95 A.2d 740, 744, the Court said:

"The true test of the relationship arises from the nature of the transaction itself and the intent of the parties involved.

" 'The issue of trust or no trust turns almost invariably on proof of intention since the trust arises upon mere expression of the requisite intention.' Eagles Bldg. & Loan Ass'n v. Fiducia, 135 N.J.Eq. 7, 37 A.2d 116, 118 (Ch. 1944)."

The case of American Surety Co. of New York v. Greenwald, 223 Minn. 37, 25 N.W.2d 681, 685, is pertinent to the instant case. There the Court said:

" * * * There are various statements in bankruptcy treatises and in many decided cases to the effect that to constitute 'fiduciary capacity' within the meaning of subd. a(4) of § 17 there must be a technical or expressed trust relationship. It appears to us that the facts in the instant case establish such a technical or expressed trust relationship as to make the position of defendant a fiduciary one within the meaning of subd. a(4) of § 17. In holding that the arrangement existing between defendant and Travelers at the time of the transactions in question constitutes a trust arrangement, we are not achieving that result by ignoring the established principles of the law of trusts. The facts here present well establish that defendant received and collected the premiums under and pursuant to clear and definite terms set forth in the written instrument presented to him by Travelers. That instrument specifically prescribes, as to defendant, that after receiving 'the gross premium from the state, you will in turn deduct your total commission as agreed upon in this letter *and that you will then remit the balance to us.'* Thus, defendant received and collected the money as a trustee under an express trust. Bearing upon the question before us is the following from Re-

statement, Trusts, § 12, comment g, which is peculiarly applicable to the facts of the case at bar: :

\* \* \* \* \* \*

"That the arrangement here existing between Travelers and defendant constituted an express trust would seem clear under the decisions of this court, illustrative of which is Wertin v. Wertin, 217 Minn. 51, 54, 13 N.W.2d 749, 751, 151 A.L.R. 1302, where this court said: ' "Express trusts are those which are created by the direct and positive acts of the parties, by some writing, or deed, or will; or by words either expressly or impliedly evincing an intention to create a trust." 65 C.J., Trusts, pp. 220, 221, [§ 10] B. In our cases we have defined such trust to be "one created by the parties in language directly and expressly pointing out the persons, property, and purposes of the trust." 6 Dunnell, Dig. & Supp. § 9877, and cases in note 95; In re Estate of Burton, 206 Minn. 516, 289 N.W. 66.' "

Another point urged in the majority opinion on rehearing is that the word "trust" is not used in the agreement. In the suit of State v. United States Steel Co., supra, the Court held that to constitute a trust it is not necessary that the word "trust" be used.

The third point urged is that the premiums collected by the Local Agent were not

segregated. Again, in State v. United States Steel Co., supra, the Court said:

" \* \* \* the \* \* \* facts here, show no segregation of the withholdings. But segregation of funds is only one of many factors to be weighed and considered in ascertaining the true intent of the parties. Failure to segregate the funds is not determinative of the conclusion that the relationship was debtor and creditor. The intermingling of funds in itself does not destroy a trust otherwise evidenced by the intent of the parties."

I respectfully dissent.