HALL, Judge.
The sole question in this case is whether a judgment in favor of plaintiffs was discharged by the defendants’ discharge in Bankruptcy.
Plaintiffs obtained a judgment against the defendants, Beverly Evans, wife of/and Alfred A. Courtiade for $6,000.00 plus in *419 terest and costs in proceedings No. 56-510 of the docket of the 24th Judicial District Court for the Parish of Jefferson. The judgment was rendered on June 21, 1965 and was not appealed.
On November 19, 1965 plaintiffs filed a petition in the Civil District Court for the Parish of Orleans to have the Jefferson Parish judgment made executory and to have a writ of fieri facias and garnishment issued thereunder. United States Fidelity and Guaranty Insurance Company, the employer of Mrs. Beverly Evans Courtiade was made garnishee.
On December 3, 1965 the judgment debtors, Mr. and Mrs. Courtiade filed a rule to dissolve the garnishment alleging that both of them had received their discharges in bankruptcy; that the indebtedness represented by the judgment in favor of plaintiffs is one that is dischargeable in bankruptcy; and that it was in fact so discharged. They attached to their rule to dissolve photostatic copies of the bankruptcy proceedings.
The Trial Judge dismissed the rule to dissolve the garnishment on a finding “ * * * that the judgment of the 24th Judicial District Court for the Parish of Jefferson in Proceedings No. 56-510, is a non-discharge-able debt incurred by movers through willful conversion, unaffected by movers discharge in bankruptcy * * * ”
The judgment debtors (plaintiffs in rule) appealed.
Whether the judgment in question is dis-chargeable or non-dischargeable in bankruptcy must be determined from the pleadings, the evidence, and the record in the Jefferson Parish proceeding, introduced as exhibits at the trial of the rule in the Civil District Court.
We have examined this record and have carefully reviewed the testimony adduced at the trial of the., case. Plaintiffs, Jerome E. White and Rosemary Bergeron sued Beverly and Alfred Courtiade to have their half interest recognized in a certain tract of land in Jefferson Parish. The petition recites that the defendants were record owners of the land but in truth and in fact plaintiffs each had an undivided one-quarter interest therein stemming from a verbal agreement entered into between the four litigants in 1956 to jointly buy the property, to hold the property until it appreciated in value, and then to sell it and divide the profit. Plaintiffs prayed for recognition as owners of a half-interest in the property, and in the alternative, prayed for a judgment for one-half of its market value of $10,000.00. In the further alternative plaintiffs prayed for the return of approximately $2,200.00 which they had invested in the property.
Defendants answered admitting the oral agreement between the parties, but alleged that on December 25, 1955 plaintiff, Jerome White, borrowed $1,800.00 from Alfred A. Courtiade and had given Courtiade a promissory note bearing 6% interest as evidence of the loan. Defendants alleged that White made no payments on this note and in 1959 White agreed to give up his interest in the real estate in exchange for the cancellation and return of his $1,800.00 note. Defendants’ answer is silent as to Rosemary Ber-geron’s one-quarter undivided interest in the property. Defendants’.answer also disclosed that defendants sold the property in question on May 11, 1960, 21 days before suit was filed.
' Plaintiffs, being unaware that the property had been sold until they received a copy of defendants’ answer, subsequently amended their petition and prayed for a judgment in the sum of $6,000.00 representing one-half of the sales price.
The evidence establishes that in January 1956 Jerome White, Rosemary Bergeron and the two defendants agreed to acquire jointly an unimproved tract of land in Jefferson Parish for speculation. Plaintiffs were told by Courtiade that he could obtain a lower price and more favorable financing if he was permitted to represent himself as *420 the sole purchaser. Plaintiffs gave him $300.00 representing what they were told was one-half of the down payment and $37.50 for their one-half of the closing costs. On March 15, 1956 title to the property was taken in defendants’ name. It was purchased from Charles Gennaro for $450,00 cash, and the balance of $4,050.00 was represented by a mortgage note for that amount. According to the agreement between plaintiffs and defendants, plaintiffs were responsible for one-half of the monthly mortgage note payments. Although the mortgage payments were actually $60.00 per month, Courtiade told plaintiffs the payments amounted to $80.00 per month and that they owed him $40.00 per month as their one-half thereof. Plaintiffs paid Courtiade $40.00 per month on the mortgage note plus annual tax payments through December 1959.
During 1958 plaintiffs attempted without success to have their interest in the property made a matter of public record. In September 1959 Courtiade advised both plaintiffs that the property had been “repossessed”. This made White suspicious and he together with one Albert Voss, checked the conveyance and mortgage records of Jefferson Parish and discovered that Courtiade had not lost the property. White and Voss also learned that the monthly mortgage payments were $60.00 and not $80.00 as they had been informed by Courtiade.
In October 1959 Courtiade without consulting either of the plaintiffs mortgaged the property and another tract for $9,000.00. Plaintiffs received none of the proceeds of this mortgage. Defendants continued to accept payments from plaintiffs through December 1959. In January 1960 plaintiffs gave Courtiade a check for $40.00 which he never cashed and refused to accept any more payments tendered by plaintiffs.
On May 11, 1960 defendants sold the property for $12,000.00, thus realizing a $7,500.00 profit. Plaintiffs were given no part of the proceeds of the sale and were even unaware that the property had been sold until that fact was disclosed in defendants’ answer to their suit.
It would serve no good purpose to enter into a detailed discussion of the evidence. It is manifest from the record that the defendants dealt deceptively with both plaintiffs from the very outset of the verbal agreement of 1956. Plaintiffs paid defendants' $300.00, supposedly their half of the down payment. Actually Courtiade collected two-thirds of the down payment from them. Courtiade told them the mortgage payments were $80.00 per month. In fact the payments were $60.00 but Courtiade collected $40.00 a month from plaintiffs which was two-thirds instead of the one-half the agreement called for. Courtiade mortgaged the property without consulting plaintiffs or giving them any of the proceeds of the loan. Finally Courtiade sold the property at a $7,500.00 profit and plaintiffs not only never received any part of the sales price but were unaware of the sale until answer was filed to their suit.
Courtiade’s main defense was that White owed him $1,800.00 represented by White’s promissory note for that amount, arid that White agreed to relinquish his interest in the property in exchange for a cancellation and return of the note. It is obvious that the Trial Judge did not believe any part of the note story and neither do we. Furthermore the record reveals that Alfred Cour-tiade repeatedly lied during the trial and that Beverly Courtiade lied about the note which was the only matter she was questioned about.
The action of defendants in deliberately selling the property and appropriating the proceeds of the sale without the knowledge or consent of plaintiffs who had a half-interest in such proceeds was a willful and malicious conversion of such proceeds.
In our opinion the judgment rendered by the Jefferson Parish Court represents a *421 non-dischargeable debt, unaffected by the judgment debtors’ discharge in bankruptcy.
The pertinent section of the Bankruptcy Act (11 U.S.C.A. § 35) reads in part as follows:
“§ 35. Debts not affected by a discharge.
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another * * * ”
It has long been settled that a willful and malicious conversion of property is an injury to property within the scope of the Bankruptcy Act exception, and the liability therefor is not released by the discharge. (See McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205; L. & M. Building and Supply, Inc. v. Soileau, La.App., 176 So.2d 756; Probst v. Jones, 262 Mich. 678, 247 N.W. 779; see also 9 Am.Jur.2d § 792 p. 594.)
The judgment debtors contend that this case does not fall within the purview of 11 U.S.C.A. § 35(a) (2) above quoted but rather falls within the purview of 11 U.S.C.A. § 35 (a) (4) which reads in part:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity * * * ”
They contend that the relationship between plaintiffs and Courtiade was that of principal and agent “in the nature of a trust agreement but not in a ‘fiduciary capacity’ or a technical or express trust, but rather a type of trust, which is implied from the position of the parties involved” and cite the decision of the Supreme Court in Emery & Kaufman, Ltd. v. Heyl, 227 La. 616, 80 So. 2d 95 to the effect that agents, bailees, brokers and the like are not in a fiduciary capacity by virtue of an express or technical trust and consequently debts created by their fraud, embezzlement, misappropriation, or defalcation in such positions do not fall within the exception created by 11 U.S. C.A. § 35(a) (4) and are therefore dis-chargeable in bankruptcy. "
In our opinion, subsection (a) (4) and the decision in Emery & Kaufman, Ltd. v. Heyl have no application to the instant case. There was no agency relationship between the litigants in this case. The relationship of the litigants regarding this contract was one of joint venture in one separate transaction.
Finally the judgment debtors contend that even if the judgment of the District Court of Jefferson Parish be held to be non-dischargeable as to Alfred A. Cour-tiade it should be held to be dischargeable as to Beverly Evans Courtiade since the record contains no evidence of wrongdoing on her part. The record reveals that she was a party to the original agreement, participated in the act of purchase in 1956 and appeared in the sale when she and her husband sold the property in 1960. She also corroborated her husband’s untrue defense concerning the $1,800.00 note and was cautioned by the Trial Judge during the course of her testimony. In our opinion she actively participated in the willful conversion.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by appellants.
Affirmed.